The Cou-rt,
 

 after great confideration, delivered their opinions, feriatim, as follow :
 

 Chace, Jujtice.
 

 The Defendants in error, on th ' day of
 
 July,
 
 1774, palled their penal bond to
 
 Farrell
 
 and
 
 Jones,
 
 for the payment of
 
 f.
 
 2,976 II 6, of good
 
 Britijh
 
 money; but the condition of the bond, or the time of payment, does not appear on the record.
 

 On the 20th
 
 of-October,
 
 1777, the legislature of the commonwealth of
 
 Virginia,
 
 palled a law to
 
 fequefier Britijh
 
 property, In the 3d fedliou of the law, it was enabled, “that it ihould be
 
 lawful
 
 for any citizen of
 
 Virginia,
 
 owing money to a fub-je£l of
 
 Great Britain,
 
 to
 
 pry
 
 the lame, or any part' thereof, from time to time, as he-ihould think fit, into the loan office, taking thereout a certificate for the
 
 fame,
 
 in die
 
 name of
 
 the creditor, with an indoifemcnt, under the hand of the commit-fioner of the-faid office, expreiiing the name of the
 
 payer
 
 ; arid
 
 *221
 
 ihall deliver fuch certificate to the governor and the council’
 
 whofe receipt-
 
 ihall •
 
 difcbarge- him
 
 from fo much of the debt. And the governor and the council 'ihall, in like mannsf, lay before the General Affembly, once in every year, an account of thefe certificates, fpecifying the names of the perfons
 
 by,
 
 and
 
 for
 
 whom they
 
 were
 
 paid; and ihall fee to the fafe keeping of the
 
 fame-, fubjeSl to the future direSlions of the legiflature :
 
 provided, that the governor and the council may make fuch allowance, as they ihall think reafonable, out of the interest of the-money fo paid, into the loan office, to the wives and children, refiding in the ftate,
 
 offuch creditor.
 

 On the 26th of
 
 April,
 
 1780, the Defendants in error, paid in,to the loan office of
 
 Virginia, part
 
 of their debt, to. wit, 3,111 1-9 dollars, equal to
 
 £.
 
 933 14 0
 
 Virginia
 
 currency; and obtained a certificate from the commiffioners of the loan office, and a receipt from the governor and the council of
 
 Virginia,
 
 agreeably to the above, in part recited law.
 

 ' The Defendants in error being fued, on the above<uond, in the Circuit Court of Virginia, pleaded the above law, and the payment above ftated, in b.ar of fo much of the Plaintiff’s debt. The plaintiff,. to avoid this bar, replied the fourth article of the Definitive Treaty of Peace, between
 
 Great Britain
 
 and the
 
 United States,
 
 of the 3d of September, 1783. ■ To this replication there was a general demurrer and joinder. The Circuit Court allowed the demurrer,. and the plaintiff brought the prefent writ of error.
 

 The cafe is of. very great importance, not oniy from the property that depends on the decifion, but -becaufe the effedt and operation of the treaty are neceffarily involved. I wifiied to decline fitting in the caufe, as I had been council, fome . years-ago, in a fuit in
 
 Maryland,
 
 in favour of
 
 American debtors
 
 ; and I confulted with my brethren, who
 
 unanimoufy
 
 advi-fed me not to withdraw from the bench. I have endeavored to cliveft myfelf of-all
 
 former
 
 prejudices, and to form' an opinion with impartiality. I have' diligently attended to the arguments of the learned council, who„debatcd the feveral queffions, that were made in the caufe, with great legal abilities, ingenuity and.{kill. I have given the •fu'bje'ff, fince the argument, my deliberate inveftigation, and fliall, (as briefly ns the cafe will permit,) deliver the refult of it .with great diffidence, and the higheft refpedfc for thofe, who entertain a different .opinion. I folícit, and 1 hope I.ihall meet with, a candid allowance for the many imperfedtions, which may be difeovered in obfervations haftily drawn up, in the.intervals of attendance in court, and the co.nfideration of other very important cafes.
 

 The
 
 firfl
 
 point raffed by the council for the Plaintiff in error was, “ that the legiflature of
 
 Virginia
 
 had no
 
 right
 
 to make
 
 *222
 
 the law» of the 20th October, 1777, above'in part recited. If this objection, is -eifebliilied, the judgment of the Circuit Court muft be reverfed; becaufe it deftroys the Defendants plea- in bar, and leaves him without defence to the Plaintiff’s a ¿lion.
 

 Thia-objedlion was maintained on
 
 different
 
 grounds by the Plaintiff's council. One of them
 
 {Mr. Tilghman)
 
 contended, that the legiflature of
 
 Virginia
 
 had
 
 no right
 
 to confifcate
 
 any Britiji}
 
 property, becaufe
 
 Virginia
 
 was
 
 part.
 
 of .the
 
 difmem
 
 -
 
 bered empire■
 
 of
 
 Great
 
 Britain, and the Plaintiff and Defendants were, all of them,
 
 members
 
 of the
 
 Britijh
 
 nation,
 
 when the
 
 .
 
 debt was contracted,
 
 and therefore, that the laws of independ-ant nations do not apply to the cafe; and, if applicable, that the legiflature of
 
 Virginia
 
 was not juftified by the
 
 modern
 
 law and practice of European nations,' in confifcating private debts. In fupport of this opinion, he cited
 
 Vattel Lib.
 
 3Í
 
 c:
 
 5.
 
 f.
 
 77, who expreffes himfelf thus tc The fovereign has naturally the
 
 fame
 
 light over what his fubjefils may be indebted to enemies. Therefore,' he may confifcate
 
 debts of this
 
 nature, -if the term of payment happen in the time of war. But
 
 at prefent,
 
 in regard to the advantage and fafety of Commerce, all the /overeigns óf Europe have departed from
 
 this rigour-,
 
 and, as this
 
 cuflom
 
 has been
 
 generally
 
 received, he, who Ihould ail contrary -to it, would injure the
 
 public faith-,
 
 for Arrangers trufted
 
 his
 
 fub-jeifts, only from a firm perfuafton, that the
 
 general cuflom
 
 would be obferved.” ’ .
 

 The other council for the Plaintiff in error (Mr.
 
 Lewis)'
 
 denied any power in the
 
 Virginia
 
 legiflature, to confifcate
 
 any Britijh
 
 property, becaufe all fuch power belonged
 
 exclujively to
 
 Congrefs ; and he contended, that if
 
 Virginia
 
 had a power of confifeation, yet, it did not extend fo the confifcation of
 
 debts
 
 by the
 
 modern
 
 law and prailice of nations.'
 

 T-would premife that this objection againft the
 
 right
 
 -of the
 
 Virginia
 
 legiflature to confifcate
 
 Britijh
 
 property,, (and efpe-cially
 
 debts)
 
 is made on the part of
 
 Britiji)
 
 fubjeiis, and
 
 after •the treaty cf
 
 peace, and not by the government of the
 
 United States, L
 
 would alfo remark, that the law of
 
 Virginia
 
 was ' made
 
 after
 
 the declaration of independence by
 
 Virginia,
 
 and alfo by Cons refs; and feverat years
 
 before
 
 the-Confederation of
 
 tho-United
 
 States, which, although agreed to by Congrefs on the 15th of
 
 November,
 
 .1777, an-d affented to by ten ftates, in 1-778-, was-only
 
 finally
 
 completed and ratified on the ift- of-
 
 ‘■March,
 
 1781.
 

 t I am of opinion thatthe
 
 excluftve right
 
 of confifcating, du- .- ring the war,
 
 all pnd every fpecies of Britijh property,
 
 within the territorial limits of
 
 Virginia,
 
 refided only in- the Legiflature of th i-t commonwealth. I ihall hereafter confider whether the law of the ¾0⅞1\ of
 
 October
 
 1777, operated to
 
 confifcate
 
 or
 
 extingitijh
 
 
 *223
 

 Britijh
 
 debts, contrafted before the. war. It is worthy of remembrance, that'Delegates and Reprefentatives were elected, by the people of the feveral counties and corporations of
 
 Vir-
 
 giniá, to meet in
 
 general
 
 convention, for the purpofe of framing a new government, Ry- the authority of
 
 the people only-,
 
 and that the faid Convention met on the 6th of
 
 May',
 
 and continued in felfión until the 5th of
 
 July
 
 1776', and, in virtue , of their
 
 delegated
 
 power, eltabliíhed a conftitution, or form of government, tp regulate and determine by
 
 whom,
 
 and in
 
 -what . manner,
 
 the authority of
 
 the people
 
 of
 
 Virginia
 
 was
 
 thereafter
 
 to- be executed. As
 
 the. people
 
 of that country were the genuine fource and fountain of
 
 all
 
 power, that could be
 
 right.fully
 
 exercifed within its limits; they had . therefore an un-'queftionable
 
 right
 
 to grant it to whom they pleafed, and under what reftriftions or limitations they thought proper.
 
 The people
 
 of
 
 Virginia,-
 
 by their Conftitution
 
 orfundamental-law,
 
 granted and delegated all their Supreme civil power to
 
 a-Le'gif
 
 ■lature,' an
 
 Executive,
 
 and a
 
 Judiciary, Thz firjl
 
 to make; the
 
 fecondto
 
 execute;! and the laft to declare or expound, the' laws Of the Commonwealth. This abolition of the
 
 Old
 
 Governmént, and this eftabiiihmer.t of-a
 
 new
 
 one was the higheft aft of power, that any people can exercife. 1 From the moment
 
 the people
 
 of
 
 Virginia
 
 exercifed
 
 this
 
 power,-all dependence op, and .cori-neftion with
 
 Great -Britain
 
 abfolutely and forever ceafcd; and
 
 no formal
 
 declaration of Independence was neceflary, although a decent refpeft for the opinions of mankind required a • declaration of the caufes, which impelled
 
 t
 
 the fepáration; and was proper to gi ve notice of the event to the nations of
 
 Europe.
 
 •—I hold it as unqueftionable, that the
 
 Legiflature
 
 of
 
 Virginia
 
 eftabliílied as I have ftated by the authority of the people, was for ever thereafter invefted with the
 
 fupreme andfovereigh power of the Jlate,
 
 and with authority to make any
 
 Laws
 
 in their diferetion, to afteEt'the
 
 lives,
 
 liberties,.and
 
 property
 
 of - all the citizens of that Commonwealth,
 
 with this exception only,
 
 that . fuch laws ftiould not be repugnant to the
 
 Conjiitution, ox fundamental
 
 law, which could b.e fubjeft only to the controul oí the
 
 body of the nation,
 
 in cafes not to be defined, and which
 
 will always
 
 provide for tbemfelves. The
 
 legiflative
 
 power of every nation can only be reftrained by its
 
 own conjiitution
 
 : and it is the duty of its courts of juftice not to q'ueftion the
 
 validity
 
 ■of any law'made in ptirfuance of the conftitution. There is no queftion but the aft of the
 
 Virginia
 
 Legiflature (of the 20th of
 
 OSiober
 
 1777) was within the authority, granted to them by
 
 the people
 
 of that country; and this being’admitted, it is a necefla- • fy refult, that the law ’ is obligatory on the courts of
 
 Virginia,
 
 and, in fny opinion, on the courts. of the
 
 United' States.'
 
 If
 
 Virginia
 
 as afovereign State, violated the.ancient or .modera
 
 *224
 
 law of nations, in making the law of the 2.olh of
 
 October
 
 1777, ihe was anfweriible in her
 
 -political
 
 capacity to the
 
 Britijh
 
 nation, whofe ftibjedts have been injured in confequence of that law. Suppofe a general right td confifcate
 
 Britijh
 
 property, is admitted to be in Congrefs, and Congrefs had confifcated all
 
 Britijh
 
 property within
 
 the--United
 
 States, including: private debts : would it be permitted to contend in any court of the
 
 United States,
 
 that' Congrefs hadt no power to confifcate fuch debts, by the
 
 modern
 
 law of nations ? If the
 
 right
 
 is conced-to be in Congrefs, it neceffarily follows, that ihe is. the judge-of the exercife of the right, a? to the
 
 extent, mode,
 
 and
 
 manner.
 
 The fame reafoning is ftridtly applicable to
 
 Virginia,
 
 if confidered a
 
 fovereign nation-,
 
 provided' ihe had not delegated fuch power to Congrefs, before the making of the of
 
 October
 
 1777, which I will hereafter confider.
 

 In
 
 June
 
 1776, the Convention of
 
 Virginia formally
 
 declared, that
 
 Virginia
 
 was a free, fovereign, and independent ftate; and od the 4th of July, 1776, following, the
 
 United States,
 
 in Congrefs aflembled, declared the
 
 Thirteen United Colonies fres
 
 and independent ftates; and that as
 
 fuch,
 
 they had full power to levy war, conclude peace, &c. I confider this as a declaration, not that the United Colsniesybnzí/y, iñ a
 
 collective
 
 capacity, were independent ftates, &c. but that
 
 each
 
 of them was. a fovereign and independent ftate, that is, that
 
 each
 
 of them had a right -to govern itfelf by its own authority, and its own laws, without any controul from any other power upon earth.
 

 Before
 
 thefe folemn a£ts of feparation from the Crown of
 
 Great Britain,
 
 the war between
 
 Great Britain
 
 "and the United Colonies,
 
 jointly,
 
 and
 
 feparately,
 
 was
 
 a civil
 
 war; but inflantly, on that great and ever memorable event, the'war changed its nature, and became a public war between
 
 independent
 
 governments'; and immediately thereupon all the
 
 rights of public
 
 war (and all the other rights of an independent nation) attached to the government of Virginia; and all the
 
 former political
 
 connexion, between
 
 Great Britain
 
 and
 
 Virginia,
 
 and alfa between their- refpedb've fubjedts, were totally diffslved; and not only the
 
 two nations,
 
 but all the fub-j eels of each, were-in a ftate of war; precifely as in the pre-fent war between
 
 Great Britain
 
 and
 
 France. Vatt. Lib.
 
 3. ⅞92-
 
 to 2,95:Jib.
 
 3. r. 5./ 70; 72 and 73.
 

 From the4th of
 
 July, fat.'American
 
 States were
 
 defaSio,
 
 as well as
 
 de
 
 jure,. in the- poffeftion and adtual exercife of
 
 all the.rightsW
 
 independent governments. On theóthof
 
 February,
 
 1778, the King of France entered intoatreaty
 
 of alliance
 
 with the
 
 United States',
 
 and on the 8th of
 
 Od.
 
 1782,3 treaty of Amity and Cqrnmerce was'.concluded between
 
 the United States
 
 and the States'General of the
 
 United Provinces.
 
 T have ever
 
 *225
 
 Gonfidered it as the eftabliihed doftrine of the
 
 United States,
 
 that their independence originated from, and commenced with, the declaration of Congrefs, on the 4th of
 
 'July,
 
 1776 ; and that
 
 no other period
 
 can be fixed on for its commencement j and that all laws- made by the legiilatures of the feveral ftates,
 
 after
 
 the declaration of independence, were the laws of fovereign and independent governments.
 

 That
 
 Virginia'was
 
 part of the difmembered
 
 Britijh
 
 empire, can, in my judgment, make no difference' in the cafe. IMo Rich diftindfion is taken
 
 by'Vattell
 
 (or any other
 
 writer)
 
 but Battell, when confidering the
 
 rights of war
 
 between
 
 two parties
 
 abfolutely independent, and no longer acknowledging a common fuperior (precifely the cafe in queftion) thus expref-fes himfelf,
 
 Lib.
 
 3.
 
 c.
 
 18
 
 f
 
 295» “’In
 
 fuch
 
 cafe, the ftate is difiblved,.and the war between the
 
 two
 
 parties, in
 
 every re-fpe¿i,
 
 is the fame with that of
 
 a public war
 
 between
 
 two different nations.”
 
 And
 
 Vattell
 
 denies, that
 
 fubjeEls
 
 can acquire
 
 property
 
 in things taken during a civil, war. ■
 

 That the
 
 creditor
 
 and
 
 debtor
 
 were members of the fame
 
 empire, when the debt was contrasted,
 
 cannot (in my opinion/ diftinguiih, the cafe, for the
 
 fame
 
 reafons. A moft arbitrary claim was made by the parliament of
 
 Great Britain,
 
 to make laws to bind the people of
 
 America,
 
 in
 
 all cafes whatfoever,
 
 and the King of
 
 Great Britain,
 
 with the approbation of parliament, employed, not only the national forces, but hired foreign mercenaries to compel fubmiffion to this abfurd claim of
 
 omnipotent
 
 power.. The refiftance againft this claim was
 
 jujl,
 
 and independence became neceftary; and the people of the
 
 United States
 
 announced to the people of
 
 Great Britain,
 
 “ that they would hold them, as the reft of mankind,
 
 enemies in war, ;in peace, friends.”
 
 On the declaration of independence, it was in the option of any fubjedt of
 
 Great Britain,
 
 to join their brethren ,in
 
 America,
 
 or to remain fubjedls of
 
 Great Britain.
 
 Thofe who joined us were entitled to all the benefits of our freedom and independence; but- thofe who eledled tq continue fubjects óf
 
 Great Britain,
 
 expofed themfelves to any lofs, that might arife therefrom. By their adhering to the enemies of the
 
 United States,
 
 they
 
 voluntarily
 
 became parties to the injuf-tice and oppreffion of the
 
 Britijh
 
 governmentand they alfo contributed to carry on' the war, and to enilave their'former fellow citizens. As members of the
 
 Britijh
 
 government, from their own choice, they became
 
 perfonally
 
 anfwerable for the condudt of that government, of which they remained a part; and their property,-wherever found (on land or water) became liable to confifcation. . On this ground, Congrefs on the 24th of
 
 July,
 
 177Ó, confifcated
 
 any Britijh
 
 property taken on the
 
 feas.
 
 See 2
 
 Ruth. ínjl. UK % c. q.f
 
 13.
 
 p.
 
 531. 559.
 
 Fait.
 
 
 *226
 

 lib.
 
 .2.
 
 c. ■j.f.
 
 81.
 
 & c.
 
 18./ 344.
 
 lib.
 
 3.
 
 c;
 
 5.
 
 f
 
 74.
 
 c.
 
 9.
 
 f.
 
 161. is? 193.
 

 ■ The
 
 Britijh
 
 creditor, by the conduct of his fovereign, became 'an
 
 -enemy
 
 to the common wealth of Virginia; .and thereby his debt was forfeitable to that government, as a compenfation for the damages of an
 
 unjufl
 
 war.
 

 It appears- to me, that every nation at
 
 war
 
 with'another is juftifiable,'¿y
 
 the general andJlriSt law of nations,
 
 to feize and confifcate all
 
 moveable
 
 property of its enemy,, (of any kind or nature-whatfo<*ver.)
 
 wherever found,
 
 whether within -its territory,or. not.
 
 Byn'kerjhoek JL I.' P. de rebus bellicis. Lib.
 
 1.
 
 c.
 
 7.'
 
 p.
 
 175. thus delivers his opinion,- “
 
 Cum ea fit belli conditio lit hojfes first, bnini jure, fpoliati profcriptique, rationis ejt, quafcunqug'res hojliuni, apud hoftes inventas, L)ominum.mutare, et Fifco ceder-eP
 
 “ Since it is a condition of war, that enemies, by
 
 ’every right,
 
 may be plundered, and feized' upon, it is rea-fonable that whatever effects..of (the enemy are found with us who-áte his enemy, ihould change their matter, and bé confif-cated, or
 
 go into .thetrcaJuryP
 
 S. P.
 
 Lee on Capt. c.
 
 8
 
 ,p.
 
 IX1.
 
 •$. P:<X. Burt-, .pi f.
 
 12.
 
 p. Q,lt).f.
 
 2
 
 .p’.
 
 221
 
 f.
 
 U.
 
 Bynkerjhoek
 
 the famfe borik, and chapter,
 
 page
 
 177. thus exprefles himfelf:
 
 Sjuod dixi de actionibus reñe publicandis ita demum obtinet. .Si quod fubditi -nojiri hofiibus noflris debent, princeps a fubdi- ■ til Jilts, reqpenasexegerit: Si exegerit reble fiolutum ejl, si non exegerit, ■pace fadla, revivifcit jus priflinum
 
 creditoris;
 
 quia bccupatio, qua bello fit, magis.in faño, quam m potejlate juris ’confijtit.
 
 N.oimna*
 
 igiturnon exaSia, tempore belli quodam-modo intertnorb’-videntur, fed per pacem, genere quodam pojili-•minii, ndpriórem dominum .revertí. Secundum hcec inter gentes fere convenitut nominibus bello publicatis, pace deinde fafia, ex-■aSta cenfeantur-periijfe, et maneant-extmSia-, .non auiem exaSia ‘
 
 revivifcant,
 
 et refiituantur veris creditoribusP
 

 What I have faid of
 
 things.in aSiion'being rightfully
 
 con-“.fifc-ated, holds thus: If the prince truly
 
 exaSts
 
 from his fub- « j.e&, what they owed to the enemy; if he {hall haveexacted it, it is
 
 rightfully
 
 paid, if he ihall not have exacted it, peace !<c being made, the
 
 former
 
 right of the creditor
 
 revives-,
 
 becaufe “ the feizure, which is made during war, confitts more
 
 mfaSt
 
 - “than iriiright. Debts, therefore, not exáétfed, feem as it “ wére. to be forgotten in time of war, but upon peace;
 
 by a
 
 “
 
 kind of pofiliminyf
 
 return.to their former' proprietor. • Accordingly, ’ it is for , the moft part agreed among nations, “
 
 that things in action,
 
 being confifcated in war, the peace be-. ■ “ ing made,- thofe which were
 
 paid
 
 are deemed to-have
 
 perijhed.,
 
 . “ and'-remain cxtinSt; but thofe
 
 not-paid
 
 revive, and are re-“ftcred to their true creditors.
 
 Fait. lib.
 
 4.
 
 f.
 
 22.
 
 S. P. Lee Capt, cl
 
 8.
 
 p
 
 118..".'
 

 
 *227
 
 That this is the law of nations, as held 'in
 
 Great
 
 Britain, appears from Sir
 
 Thomas Parker’s Rep. p.
 
 267 (n
 
 William 3d)
 
 in which it vsas determined, that
 
 chafes in afilón
 
 belonging to an
 
 alien enemy
 
 are
 
 forfeitable
 
 to the crown of
 
 Great
 
 Britain; .but there muft be a commifiion and inquifitiori 'to entitte-the. crown ; and if peace is concluded
 
 before
 
 inquifition taken,
 
 it difcharges the cuufg of forfeiture. .
 

 The
 
 right
 
 to confifcate the-property of enemies, during war, is derived'from
 
 aJlate of
 
 war, and is called the
 
 rights of war.
 
 This right originates from
 
 felf-prefe.rvaiion,
 
 and is adopted as one of the means to weaken an enemy, and to ftrengthen our-fclves. Juflice, alfo, i$ another pillar on which it may-reft; to wit, a right to reimburfe the expence of an
 
 unflift
 
 war.
 
 Vatt. lib.
 
 3.
 
 c. i.f.
 
 138, &’
 
 c. ().f
 
 161.
 

 But it is faid, if
 
 Virginia
 
 had a right to confifcate
 
 Briiijh
 
 property, yet by the
 
 modern
 
 law, and praftice of
 
 European
 
 nations, ihe was not juftified in confifcating
 
 debt's
 
 due from her citizens to fubjefis of
 
 Great Britain-,
 
 that.is, privaré debts.
 
 Vaitell
 
 is the only author relied on (or that'can be- fourth) to maintain the diftinhtion between confifcating
 
 private
 
 debts, and
 
 other property
 
 of an enemy. He admits the
 
 right,
 
 tocon-fifeate
 
 fuch
 
 debts, if the term of payment happen in the, time of war; but this -limitation on the' right is no.-where elfe to be found. His opinion alone will not be fufficient ta reftriift the right to.that cafe only. It does not appear in the prefent cafe, whether the time of payment happened before, or during'the war. If this reftriótion is juft, the Plaintiff ought to,have ihewn the fa£t. ■
 
 Vattell
 
 adds, “ at prefent, in regard .to the advantages and fafety of commerce,
 
 all
 
 the fovereig.ns of .Europe •have departed from
 
 this
 
 rigour; &d this
 
 cuflobn
 
 has -been
 
 generally
 
 received; and he' who ftiould ait Contrary td'it (the euf-tom) would injure the public faith.” From-thefe exfireiT-ons it may be fairly inferred, that, by the rigour of the law of nations,
 
 private debts
 
 to ¡enemies might be confifcated, as well as any .' other of their property; but that a
 
 general cuflom
 
 had- prevail- • ed. in Europe to tjfi contrary;, fourided on commercialreafons. .. The law of nations may be confidéred of three kinds, 'to wit, general, conventional, or
 
 cuflomary. Thefirfl
 
 is unlve'rfal, or eftabliihed by the general confent of mankind, and binds-
 
 all nations.
 
 The fecond'is founded on
 
 exprefs
 
 confent, and is not univeífál, and only binds thofe nations thatbave ailen’ted to itl The
 
 third is
 
 founded on ta-cit confent'; .and is only-obligatory on thpfe nations, who have adopted it.' The relaxation or depárture from the
 
 Jlrifi rights of war
 
 to confifcate private debts, by the
 
 commercial
 
 nations.fif Europe, Was riot binding . on the fíate of Virginia, 'becaule fi virided
 
 on cuflom, only
 
 ; and ,'ihe was at liberty to -reject, or adopt the cuflom, as fhe piealed.
 
 *228
 
 The,conduifl'of nations at war, is generally governed and li-rnited by 'their exigencies and neceffities.
 
 Great Britain
 
 could not claim from the
 
 United States,
 
 or any of them, any relaxation- of the
 
 general
 
 law of nations,
 
 during the late war,
 
 be-caufe flie did-not corifider it, as a
 
 civil
 
 war, and much lefs as a
 
 public
 
 war, but ihc gave it the odiotis name of
 
 rebellion
 
 j and ihe refufed to the citizens of the
 
 United States
 
 the
 
 ftriSl rights of ordinary
 
 war.
 

 It cannot be forgotten, that the Parliament of
 
 Great
 
 Britain, .by ftatute (16
 
 Geo.
 
 3.
 
 c.
 
 5.
 
 in
 
 1776) declared, that the veffels and cargoes belonging to the people of Virginia, and the twelve othpr colonies, found and .taken on the high feas, fhould be liable to feizuré and confiscation, as the property of open enemies ; and, that' the mariners and crews fhould be taken and confidered as havirig
 
 voluntarily
 
 entered into the fervice of the King of
 
 Great Britain
 
 ; and that the killing and deftroying the perfons and property of the'
 
 J'mcrleans, before
 
 the paffing this ?.⅝ was
 
 juft and
 
 lawful: And it is web known that, in. confequence of this ftatute, very confiderabfe property of the citizens of
 
 Virginia
 
 was feized on the high feas, and confif-cated ; and that other confiderable property, .found within that' Common wealth, was feized and applied to the ufe of -the
 
 Britijh
 
 army, or nr
 
 vy. ' Vattcllib.
 
 3.
 
 c.
 
 12.
 
 fee.
 
 191. fays, and reafon confirms -his opinion, “ That whatever is lawful for one nation to do, in time of war, is lawful'for the other.” The lav/ of nations, is part of the .municipal law of
 
 Great Britain,
 
 and by her laws all
 
 moveable
 
 property of enemies, found within the kingdom, is confidered as forfeited to the crown, as the head of the nation; but if "no inquifition is taken to afeer-tain the owners to be
 
 alien enemies, before peace
 
 takes place, the caufe of forfeiture is difeharged, by the peace
 
 ipfofaSto. Sir Thomas Parker's Rep. pa.
 
 267. This dodtrine agrees with
 
 Bynk. lib;
 
 1.
 
 c.
 
 7.
 
 pa.
 
 177. and
 
 Lee on Capt. ch.
 
 8.
 
 p.
 
 xi8. that
 
 debts
 
 . not confiscated and
 
 paid,
 
 revive on peace.
 
 Lee
 
 fays, “ Debts, therefore, which are not
 
 taken hold of,
 
 feem, as it were, fufpended and forgotten in time of war 3 but by a peace return to their former proprietor by a
 
 kind of
 
 pojlliminy.” Mr.
 
 L,ee,
 
 who wrote fince
 
 Vattel,
 
 differs from him in opinion,-that
 
 private debts
 
 are not cenfifcable,
 
 pag.
 
 114. He thus delivers, himfelf:
 
 “
 
 By the law of nations,
 
 Rights and Credits
 
 aré not lefs in our power than
 
 other goods
 
 ; why, therefore, fhould we
 
 regard the rights of war
 
 in regard to
 
 one,
 
 and not as. to the
 
 other?
 
 And when' nothing occurs, which gives room for a proper diftindtion, the
 
 general
 
 law of nations ought'to prevail.” He gives many examples of
 
 confifcating debts,
 
 and concludes,
 
 (p.
 
 119) “ All which prove, that not tínly aSiions, but ail
 
 *229
 
 other things whatfoever, are forfeited in time .of war, and are often exafled.”
 

 Great Britain
 
 does not confider herfelf bound to depart from the rigor of the
 
 general
 
 law of nations, becaufe the
 
 com-. fnercial
 
 powers of Europe wifh to adopt a more
 
 liberal
 
 practice. It may be recollected, that it is an eitablifhed principle of the law of nations, “ that the goods of a
 
 friend
 
 are free in an
 
 enemy’s
 
 veffel ;• and an
 
 enemy’s
 
 goods lawful prize in the veiTel of
 
 a. friend.”
 
 This may be called the
 
 general law
 
 of nations. In 1780 the Emprefs of Ruília propofed a relaxada on of this rigor of the laws of nations, “ That all the effects belonging to the fubjedts of the'
 
 belligerent powers
 
 ihall be free on board
 
 'neutral
 
 veifels, except only
 
 contraband
 
 articles.” This propofal was acceded to by the neutral,powers of
 
 Sweden., ¡Denmark,
 
 the
 
 States General of the United Provinces, Pruffta
 
 and Portaged;
 
 France
 
 and
 
 Spain,
 
 two of the powers at, war, did not
 
 oppofe
 
 the principle, and
 
 Great Britain
 
 only declined to adopt it, and ihe {till adheres to the
 
 rigorous
 
 principle of the law of nations. Can this con duff of
 
 Great Britain
 
 be objected to her as
 
 an uncivilized and barbarous practice ?
 
 The 'confifcating
 
 -private debts
 
 by
 
 Virginia
 
 has been branded with thofe terms of reproach, and very improperly in my ©pinion.
 

 It is admitted, that
 
 Virginia
 
 could not confifcate
 
 private debts
 
 without a violation of the
 
 modern
 
 law of natipns,.yet if in
 
 fail,
 
 ihe has fo done, the law is obligatory, cm all the citizens of Virginia, and on her Courts of Juftice; and, in my opinion, on all the Courts of the
 
 United States.
 
 If
 
 .Virginia
 
 by fuch conduct violated the law of nations, file was anfweraable to
 
 Great
 
 Britain, and
 
 J'uch injury could only be redreffed in the treaty of peace.
 
 Before the efiabliihment of the national government,
 
 Britijh
 
 debts could only be fued for in the
 
 Jlate
 
 court- This, alone, proves that the ieveral ftates poiTeiT-ed a power over debts. • If the crown of
 
 Great Britain
 
 had, according to the
 
 mode
 
 of proceeding in that country, confifcat-ed, or forfeited
 
 American debts,
 
 would vit have been permitted in any of the courts of
 
 Wef minder Hall,
 
 to have denied the
 
 right
 
 of the crowfi, and tiiat its power was reftrained by the
 
 modern
 
 law of nations? Would it nót have been anfwered, that the
 
 Britijh
 
 nation was to juftify her own conduit; but that her epurta were to obey her laws.
 

 It appears to me, that there is another and conclufive ground, which effectually precluded any objection,
 
 face the peace,
 
 on the part of
 
 Great Britain, as a
 
 nation, or on the part of- any of
 
 herfubjetis,
 
 againft the
 
 right
 
 of
 
 Virginia
 
 to confifcate
 
 Bri-tijh
 
 debts, or any other
 
 Britijh
 
 property, during the war; even on the ad mi ilion that fuch confifeation was in violation of the ancient or
 
 msderp
 
 law of nations.
 

 
 *230
 
 If the Legiflature of
 
 Virginia confiscated
 
 or
 
 extingvijhedtivs
 
 debt in quéftion, by the law of the 20th of
 
 OSiober
 
 1777, as the Defendants in error .contend, this
 
 confifcation
 
 or
 
 extinguifh
 
 ment, took place in 1777,
 
 flagrante Bello'-,
 
 and the definitive treaty of peace was ratified in 1783. What effects flow from a treaty of .peace, even if the confifcation,
 
 ox-extinguijhment
 
 of the debt was- contrary to the law of nations,
 
 and
 
 the ftipu-lationin the 4th article of the treaty does'
 
 not
 
 provide, for the recovery of the debt in queftion ?
 

 I apprehend that the treaty of peace aboliihes
 
 tho.fu.bjcSl
 
 of the war, and that after peace is concluded, neither the matter in difpute, nor- the
 
 conduit
 
 of either party, during the war, can ever’ be revived, or brought into cohteft again. All vio-lences, injuries, or damages fuftained by the government, or people of either, during the war, are buried in oblivion ; and
 
 .all thofe things
 
 are
 
 implied
 
 by the very1 treaty of peace; and therefore not neceffary to be expreffed. Hence it follows, that the reftitution of, or compenfation for,
 
 Britijh
 
 property con-fifeated, or extinguiihed, during the war, by any of the
 
 United States,
 
 could only be provided for by the treaty of peace ; and if there. had been no provifion, refpecting thefe fubje&s, ,in the treaty, they could not be agitated
 
 after, the
 
 treaty, by the
 
 Britijh
 
 government, much lefs by her fubjedts in courts of juftice. If a nation, during a’war, conduits herfelf contrary to the law’of nations, .and no notice is taken of fuch conduit-in the
 
 treaty of
 
 peace, it is thereby
 
 fs far
 
 confidered
 
 lavufulf
 
 ■as never afterwards to be revived, or to be a fubjeit of complaint.
 

 Vattel lib. 4.'feSt.
 
 21.
 
 p.
 
 121. fays, “ The ftate of things at the
 
 ''infant
 
 of the treaty, is held to be
 
 legitimate,
 
 and any change tobe made in.it requires an
 
 exprefs fpecification
 
 in'the treaty j coniequently, all things not mentioned in the treaty, are to remain as they were at the conchtfion of it.—All the
 
 damages
 
 caufed during the war are likewife buried in oblivion-; and-no plea is allowable for thofe, the reparation of .which is
 
 not mentioned in
 
 the treaty:
 
 They are looked, on as if they had never happened.'1- •
 
 The
 
 fame
 
 principle applies to
 
 injuries
 
 done by 'one nation to another, on occafion of, and during the war.
 
 See Grotius 'lib.
 
 3.
 
 c.
 
 8.
 
 feet.
 
 4.
 

 The Baron
 
 T)e lVo fui s,
 
 1222, fays, “
 
 De quibus nihil[dic-'tum ca manent quo Juni
 
 loco.” Things of which nothing is faid remain in the ftate in which they are.
 

 It is 'the opinion of the celebrated and judicious Dodior
 
 Ru-therforth,
 
 that a nation in a
 
 juft vjar
 
 may feize upon any
 
 tnove-ablc
 
 goods of
 
 in
 
 enemy, (and he makes no diftindtion as to
 
 private
 
 debts) but that whilft the war continues,' the nation has,
 
 of right,
 
 nodiing-but the
 
 cuftody
 
 of the goods taken; and
 
 *231
 
 If the nation ,has granted to
 
 private
 
 captors (as
 
 privateers)
 
 the property of goods taken by them, and on peace,
 
 rejiitution
 
 is agreed on, that the
 
 nation
 
 is obliged to make reftitution, and not
 
 the private
 
 captors; and if on peace no reftitution is fti-pulated, that the
 
 full property
 
 of
 
 moveable
 
 goods, taken from the enemy during, the war, palles, hy
 
 tacit
 
 confent,- to the nation that takes them. This I collecft as the
 
 fubjlatlce
 
 of his opinion in
 
 lib.
 
 2.
 
 'c.
 
 9, from
 
 p-.
 
 558 to 573.
 

 I ihall conclude my obfervations on ,the
 
 right
 
 of
 
 Virginia
 
 to confifcate.
 
 any Britijh
 
 property, by remarking, that the
 
 validity
 
 of fuch a law ..would not be. queftioned in the Court of Chancery of
 
 Great
 
 Britain; and 1 confefs the do&ine feemed ftrange to me in a
 
 n. American
 
 Court of. Juftice. In the cafe of.
 
 Wright and Nutty
 
 Lord Chancellor
 
 Thurlow
 
 declared,, that he confidered an a£t of the State of Georgia, palled in 1782, for the confifcaticsn of the .real ana perforial eftate of
 
 Sir "James
 
 Wright, and alfo his debts, as a law of an
 
 independent country,
 
 and concluded with the following'óbfervatibn, that.the law. of every country, muft be
 
 equally
 
 regarded in the Courts of J uf-tice of
 
 Great
 
 Britain, whether the law was a
 
 barbarous
 
 or
 
 vilifecl
 
 inftitution, or wife or foolifh.
 
 H. Black, Rep. p.
 
 149. In the cafe of ‘
 
 Folliot
 
 agsinft
 
 Ogden, Lord Loughborough,
 
 Chief Juftice of the Cb*^ °f C’ommon Pleas, in delivering .the judgment of the court, declared “ that the a£t of .the State of
 
 New York,
 
 pailed’iri 1779, for attainting, forfeiting, • and con-. fifcating the real and perfonal eftate of.
 
 Folliott,
 
 the Plaintiff, was certainly of as
 
 full
 
 validity, as the a£t of any independent State.
 
 H.
 
 Black:
 
 Rep. p.
 
 135. On a writ of error
 
 Lord'
 
 Kenyon, Chief-Juftice of the Court of King’s Bench, and Judge
 
 Grofe,
 
 delivered diretftcontrary fentiments ; but Judges
 
 Ajhurfi
 
 and
 
 Builer'were
 
 fllent. 3
 
 Term Rep. p.
 
 726.
 

 F rom thefe obfervations, and the authority of Bynkerjboek, Lee, Burlamaque,
 
 andRutherforthf
 
 conclude, that Virginia; had a right, as á fovereign and independent nation, to confifcate
 
 any Britijh
 
 property
 
 within its
 
 territory,*
 
 unlefs
 
 ihe had
 
 before
 
 delegated that power to Congrefs, which Mr.
 
 Lewis
 
 contended the had done.. The proof of the allegation that
 
 Virginia
 
 had transferred this authority to Congrefs, lies on thofe who' . make it; becaufe if ihe had parted with fuch power it muft be conceded, that ihe once
 
 rightfully
 
 poftefled it.
 

 • It has been enquired .what; powers Congrefs.poffefled from
 
 tlaefrjl
 
 meeting, in-
 
 September
 
 1774, until the. ratification of the articles of confederation, on the ift of March, 1781 ? .It appears to me, that the powers of-Cbngrefs,
 
 during that tvhole
 
 period, were derived from
 
 the people
 
 they reprefented, exprefsly given, through, the medium of their State Conventions, or State Legiflatures;
 
 or
 
 that after they were exercifed they were
 
 *232
 
 impliedly ratified b'y the acquiefcence and obedience of the people. After the confederacy was compleated, the powers of Congrefs relied on the authority of the
 
 State Legiflatures,
 
 and
 
 the. implied ratifications of the people
 
 ; and was a
 
 government
 
 over governments.' The powers of Congrefs originated from neceffity, and arofe out of, and were only limited by, events or, in other words, they were
 
 revolutionary
 
 in their very nature. Their extent depended on the exigencies and neceffities of public affairs. It was abfslutely and indifpenfably necefla-ry that Congrefs. ihould polfefs the power of
 
 conducing
 
 the war againft
 
 Great
 
 Britain, and therefore if not exprefsly given by all, (as it was by fotne of the States) I do not heiitate to fay, that Congrefs did rightfully poifefs
 
 finch
 
 power. The authority to make war, of neceffity implies the power to make
 
 peace
 
 ; or the war mult be perpetua!. I entertain this general idea, that the leveral States retained all
 
 internal fovereignty
 
 ; and that Congrefs properly poffefied the great
 
 rights
 
 of
 
 external
 
 fovereignty: Among others, the right to make treaties of commerce and alliance; as with
 
 France
 
 on-the 6th of
 
 February
 
 1778. In deciding on the powers of Congrefs, and of the feve'ral States’, before the confederation, I fee but one fafe rule, namely, that all the powers actu ally exercifed by Congrefs,
 
 before
 
 that period were
 
 rightfully
 
 exercifed, on' the preemption not to be controverted, that they were fa authorized by the people they reprefented, by an
 
 exprefs,
 
 or
 
 implied
 
 grant; and that all the powers exercifed by the State Conventions or State Legiflatures were alfo
 
 rightfully
 
 exercifed, on
 
 thefame preemption oí
 
 authority from the people. That Con-grefs did not polfefs
 
 all
 
 the powers of
 
 war■
 
 is felf-evident from this confiJeration alone, that ihe never attempted to lay anv kind of
 
 tax
 
 on the peaple of the
 
 United States,
 
 but relied altogether on the State Legiflatures to impofetaxes, toraife money to carry on the war, and to fink the emiffions of all the paper money ilfued by Congrefs. It was exprefsly provided, in the . 8th article of the confederation, that “ all
 
 charges of war
 
 (and all other expences for the common defence and general welfare) and allowed by Congrefs, ihall be defrayed out of a common T reafury,
 
 to be fupfiled by the feveral States
 
 in proportion to the value of the land in each State; and
 
 the taxes for paying the faid proportion, Jhall be levied by the Legiflatures of the fe-veral
 
 StatesIn every free country the power of laying taxes is confidered a
 
 legiflative
 
 power-over the
 
 property
 
 and
 
 per-fons
 
 of the citizens ; and this power the people of the
 
 United States,
 
 granted to their State Legiflatures, and they neither could, nor did transfer it to Congrefs; but on the contrary they exprefsly ftipulated that it ihould remain with them. It Is an incontrovertible
 
 fact
 
 that Congrefs never attempted to confif-
 
 *233
 
 cate any kind of
 
 Britijh
 
 property within the
 
 United- Slates
 
 (except what their, army, or veffels of war captured) and thence I conclude that Conerefs did not conceive the power was veftedih them. Some oftheftates did exercife this power, and thence I infer, they poffeffed it.—On the 23d of
 
 diarchy
 
 3d of
 
 April,
 
 and 24th of
 
 July,
 
 1776, Congrefs confifcated
 
 Britijh
 
 ‘property, taken on the high
 
 feas.
 

 *
 

 The
 
 fecond
 
 point made by the council for the Plaintiff in error was, “if the legiflature of
 
 Virginia
 
 had a
 
 right
 
 to confifcate
 
 ■Britijh
 
 debts, yet ihe did
 
 not
 
 cxercife that right by the aft of the 20th
 
 OStobcr,
 
 1777.”. if this objection is well founded, the Plaintiff in error muff have judgment for the money covered by the plea of that law, and the payment under it; The preamble recites, that the pui;c fidth, and the law and tiie ufage of nations require, that
 
 debts
 
 incurred, during the connexion, with
 
 Great
 
 Britain, ihould
 
 net be confifcated.
 
 No-language can poffibly be ftronger to exprefs the opinion ofjthe legifla-ture of Virginia, that
 
 Britijh
 
 debts ought
 
 not
 
 to be confifcated, and if the words or effeft and operation, of the enafting claufe, are ambiguous or doubtful, fuch conftruftion ihould be made as not to extend the. provifions in the enafting claufe, beyond the intention of the legiflature, fo clearly expreffed in tile preamble; but if the words in the enafting claufe, in their nature; import, and common undetHanding., are not ambiguous, but plain and clear, and their opeiation and effeft certain, there is no room for
 
 conJiruStion.
 
 It is not an uncommon-cafe for. a legiflature, in a preamble, to declare .their intention to provide for
 
 certain
 
 cafes, or to punifh
 
 certain offerees, .s\rÁ
 
 in enafting claufes to include other cafes, and
 
 other
 
 offences.' But I believe
 
 very few
 
 inftances can be found in which the le-giflafure declared that a thing ought not to be done, and after-wards did the very thinsr they reprobated. There can bé no doubt thatftrong words in the enafting part of a law mav e'x-tend it beyond the preamble. If the preamble is contradicted by the enafting claufe, as to the
 
 intention
 
 of the legiflature, it muff prevail, on the principle that the legiflature changed their intention.
 

 I am of opinion, that the law of the 20th of
 
 October,
 
 1777, and the payment in virtue thereof, amounts cither to
 
 a cor.jif-cation,
 
 or extinguifoment, of fo much of the
 
 debt
 
 as was paid into the loan office of
 
 Virginia,
 
 iff. The law makes
 
 it lawful for
 
 a citizen of
 
 Virginia
 
 indebted to a fubjeft of
 
 Great Britain
 
 
 *234
 
 to pay tiie
 
 'whole,
 
 or
 
 any part,
 
 of his debt, into the loan office of that commonWealth. 2<J. It diredts the
 
 debtor,
 
 to take a certificate-of his payment, and to deli ver it to the governor and the-eounci!; and it declares that the
 
 receipt
 
 of the .govern- or and] the council for the- certificate fhall difcharge him (the . debtor) from fo much of-the debt.as he paid iuto the loan office. 3d. It enadls that the certificate fhall be fubjefi to the future direólíon of tbe-legiflature. ■ And /(.thly, it provides, that the governor and council
 
 may.
 
 make fuch. allowance, as they fhall think reafonable, out of the iN.TEREsy of the mopey paid, to •the wives and children, refiding within the, ftatey of fuch
 
 creditor.
 
 The payment by the
 
 debtor
 
 int.o.ihe loan' office is made a
 
 lawful
 
 a£t. The .public receive the money,’and they difcharge the debtor, and they make the certificate (which is the evidence-of the payment) fubjeft to their direction; and they benevolently appropriate
 
 part,
 
 of the. money .paid, to .wit,, the
 
 inter ejl of
 
 the debt, to’ fuch of" the family' of. the
 
 creditor
 
 as may live within the fíate. ’
 
 All
 
 thefe ¿£ts are plainly a
 
 Icgijlative interpojition
 
 between the creditor and debtor; annihilates the right of the creditor'; and is an exercifeof the righto
 
 {.owner-
 
 ■
 
 . 'Jhip
 
 over the money; for the giving
 
 part to the family of-the
 
 creditor, under the reffn&ton of being refidents of the Rate, or to a ftranger, cad make no difference. -' The government of
 
 Virginia-
 
 had .precifely, the
 
 famc.vnfnt
 
 todifpofe of
 
 the zv hole,
 
 as of
 
 part,
 
 of the debt.. Whether
 
 all thefe aSls
 
 amount to a
 
 con-fjcation
 
 of the debt, -or. not, may.be difputed according to the ■different ideas entertained of the proper meaning of the word’
 
 conffcatioh..
 
 I am inclined to think that all thefe a&,
 
 collectively.
 
 cbnfidered,. are fubibm.tially ⅛ corififcation of the debt. The verb confifcáte is derived from, the latin,
 
 con
 
 with, and
 
 Fifcus
 
 á báíkef, or hamper, In which’, the E'mperor’s treafure was
 
 formerly hept--
 
 The’ meaning of. the word to
 
 conjjfcate.
 
 is to transfer property from' r.RiVAT.E to
 
 public
 
 ufe;' or to forfeit property to. the prince, or ftatcv in the language of Mr.
 
 Lee,, (page
 
 riS)
 
 the debt veas .taken hold,
 
 of’; and this he confiders as'corififcation. But if firjitly fpeaking, the debt was not
 
 conffcated,
 
 yet-fit certainly wras
 
 exiingulfbed
 
 as between the creditor and debtor; the debt was
 
 legally
 
 paid, and of con-fequence
 
 extinguijhecl:
 
 The {late intcifered and received the debt, and difcharged the debtor from, his creditor; and not from
 
 th-ifldte,
 
 as fuggeiled., The debtor owed nothing to the
 
 fhaterf-Virglnicc,-
 
 butfhehnd a right to take the debtor not at her- .plea.fute. To fay that the difcharge was' from the
 
 fate,
 
 and not. from the debtor, implies that the debtor yvas under fomt* obligation or duty to pay. the'{Lite, what he owed his
 
 Britijh
 
 'creditor. If the. debtor’was to remain charged to his creditor, mitwitblfending his payment,;, not wife farthing would have been
 
 *235
 
 paid into the loan office. Such aconftnnSion,.iter’éfóre^ is too vi-lentand not to be admitted. If
 
 Virginia
 
 had confifcafed
 
 Britijb
 
 debt?., and'received the debt in Cjueftion, and faid nothing more, the debtor would have beeri di (charged by the
 
 eperatiqn.ofthc law.
 
 In the prefe-nt cafe, there is an exprefs. difeharge on'payment, certificate, and receipt.
 
 ' ■ ' ■ •
 

 It appears to me that the plea, by the Defendant, of the a¿l of Affembly, and the payment agreeably to its pro-vifions, which is admitted, is a bar to the plaintiff’s atfion,
 
 -fov fo much
 
 of his debt as he paid into the loan office; unlefs the plea is avoided, or deftroyed, by the Plaintiff’s replication of the fourth article of the Definitive Treat'y of Peace, between
 
 Great Britain
 
 and the
 
 United
 
 States, on' the 3d of September, 1783..
 

 The queftion then may be ftated thus: Whether the 4th article of the faid treaty
 
 nullifies
 
 the lav/ of Virginia, palled on the ¡joth of October, 1777; deftroys the payment made under it; and .revives the debt, and gives a tight of recovery thereof, again
 
 ft. the original debtor ? ^
 

 It was doubted by one Of the counfel for the Defendants in error (Mr.
 
 Marjhall)
 
 whether Congrefs bad a power,to make a treaty, that could operate to
 
 annul
 
 a legijlathe'a£l of any of theftátes, and to deftroy
 
 rights
 
 acquired by, or veiled in indi-» vidnals, in virtue of fuch a£ls. Another of the Defendant’s council (Mr.
 
 Campbell)
 
 exprefsl-y, and with great zeal,-denied that Congrefs poffelTed fuch
 
 power.
 

 But a few remarks will be necefiary to ihdw the inadmiffibi-lity of this objection to the power of Congrefs.
 

 • ift. The legillaturcs of all the ftates, have often-exercifed the power of taking the property of its citizens for-the ufe of the .pubfic, but they uniformly compenfated the proprietors. The principle to maintain this right'is for the public good, and to. that the intereft of individuals muft yield. ■ Thé inftances are ’many; and among them are lands taken for .forts, magazines, o’r arfenals; or for public roads, or canals; or to ere£i towns.
 

 2-d. Thelegiflaturps of all tha ftates have
 
 often
 
 exercifed the power of divefting rights veiled; and even of impairing, and, in fome inftances, of alnloft annihilating the obligation of
 
 contracts^
 
 as by tender laws, which made an offer to pay, and a refufal to receive, paper money,-for a
 
 fpc'cie
 
 debt, an
 
 extinguí foment^
 
 to the' amount tendered.
 

 3d. If the Legifiature of
 
 Virginia
 
 could, by a law,
 
 annul
 
 any former law; I apprehend that the effect would be to deftroy all rights acquired-under the law fo nullified.
 

 4th.' If the Legifiature of
 
 Virginia
 
 could not by
 
 ordinary ails of ieglfiatlcn,
 
 do thefe things, yet poífeíling the fupreme lovereign power of the ftate, file certainly could do them, bv g
 
 treaty of
 
 peace; if file had not part«d with the power or ma
 
 *236
 
 king fuc'n treaty. If
 
 Virginia
 
 had Inch power
 
 before
 
 fire dele- , gated it to Congrefs, it follows, that
 
 afterwards
 
 that body pof-fefled it. Whether
 
 Virginia
 
 parted with thupower of making treaties of peace, will be'feen by a perufal of the 9th article of the Confederation (ratified b.y all theftates, on the 'rft
 
 of March,
 
 1781,j in which it was declared," “ that the
 
 United States
 
 in-Congrefs afiembled, ihall have the
 
 foie and exclufnie right and power
 
 of determining on peace, or
 
 war,
 
 except in the two cafes mentioned in the 6th article and of entering into treaties arid alliances, with a
 
 provife.,
 
 when made, refpefting
 
 commerce.”
 
 This grant has no reftriftion, nor is there any limitation on the power .in any part of the confederation. A right to make peace, neceflarilv includes the power of determining
 
 on what terms peace fall be
 
 made. A power .to make
 
 treaties
 
 muft of neceiiiry imply á power, .to decide .the terms on which they ihall be made : A war between two nations can only be concluded by
 
 treaty.
 

 Surely, the facrifi.cing public, or private, property, to obtain
 
 peace
 
 cannot be the cafes in which a treaty would be
 
 void. Vatt. lib.
 
 2
 
 e. 12. f.
 
 160. 161.
 
 †.
 
 173.
 
 lib.
 
 6.
 
 c.
 
 2.
 
 f 2.
 
 It feenis to me that treaties made by Congrefs, according to the Confederation, werefuperior to the laws of the ftates ; becaufe the Confederation made them obligatory on all the ftates. They were fo declared by Congrefs on the 13th of April, 1787; were fo admitted by the legislatures and executives of moft of the ftates; and were fo decided by the judiciary of the general government, and by the judiciaries of fome of the ftate governments.
 

 If
 
 doubts
 
 could cxift
 
 before
 
 the eftabliílnnépt of the prefent national government, they njuft be
 
 entirely
 
 removed by the 6th article of the Conftitution, which provides “ That all treaties made, or which ihall . be made, under the authority of the
 
 Urated
 
 States, ihall be the
 
 fvpreme law of the
 
 land; and the Judges in every State ihall be bound thereby, any thing in the Conjiitntion, or
 
 laws,
 
 of any State to the contrary notwithstanding.” There can be no limitation on the power of
 
 the people os
 
 che
 
 United States.
 
 By their authority the State Conftitutions were made, and .by their authority the Conftitution of the
 
 United States
 
 was eftabliíhed ; and they had the power to change or abolifh the State Conftitutions, or to make them yield to the general government, and to treaties made by their authority; A treaty cannot be the
 
 fupreme lazv
 
 of the land, that is of all'ihe
 
 United States,
 
 if any aft of a
 
 State Legifature
 
 can ftand in its way. If the Conftitution of a State (which is the
 
 fwidaniental
 
 law of the State, and paramount to its Legiilaiur.c) muft give way to a treaty, and fall before it; can it be tptaíHoncd, whether
 
 thelefs
 
 power, an aft
 
 *237
 
 of the.State Legiflature, muft not be proftrate ? It is the de-dared will of
 
 the people
 
 of the
 
 United States
 
 that every treaty made, by the authority of the
 
 United States,
 
 íhall be fuperior to the
 
 Conjlitution
 
 and
 
 laws
 
 of
 
 any individual State
 
 ; and their will alone is to decide.—If a law of .a State, contrary to a treaty, is not void, but
 
 voidable only
 
 by a repeal,' or nullification by a State Legiflature, this certain confequence follows, that the will of
 
 zfmall part
 
 of the
 
 United States-
 
 may controul or defeat the will of the
 
 whole. The people
 
 of
 
 America
 
 have been pleafed to declare, that all treaties made
 
 before
 
 the efta-blhhment of the National Conjlitution, or
 
 laws
 
 of any of the States, contrary to a treaty, íhall be difregarded.
 

 Four
 
 things are apparent on a view of this 6th article of the National Conftitution. ift. That it is RetroJpeStive, and is .to be confidered in the fame■ light a? if the Conftitution had been eftabliihed before the making of the treaty of Í783. ad. That the Conftitution, or laws, of any of the States fo far as either of them íhall J>e found contrary to that treaty are by force of the faid article, proftrated before’ the treaty. 3d. That confequently the tt'eaty of 1783 has fupe-rior power to the
 
 Legiflature
 
 of any State, becaufe no Legif-lature of any State has any kind of power over the Conftitu- . tion, which was- its
 
 creator.
 
 4thly. That it is the declared duty of the State Judges to determine any Conftitution, or laws of any State, Contrary to that treaty (or any other) made under the authority of the
 
 United States, null and void.
 
 National or' Federal Judges are bound by duty and oath to the fame conduit
 
 *
 
 .
 

 The argument, that Congrefs had not power to make the 4th article of the treaty of peace, if its intent and operation was to
 
 annul
 
 the laws of any of the States, and to deftroy
 
 vejled
 
 rights (which the Plaintiff’s Council contended to be the object and effect of the 4th article) was qnneceffary, but on the fuppofition that this court poffefs a' power to decide, whether, this article of the treaty is within the authority delegated to that bod-/, by the articles of confederation. Whether this court conftitutionaliy poffefs fuch a power is not neceffary now to determine, becaufe I am fully fatisfied that Congrefs were invefted with the authority to make the ftjpulation in the 4th article. If the court poffefs a powey to declare treaties
 
 void,
 
 I íhall never exercife it, but in a very clear cafe indeed. One further remark will fhew how very circumfpjft the court ought to be before they would decide againft the
 
 right
 
 of Cqn-grefs to make the ftipulation objefired to. If Congrefs Rad ho
 
 *238
 
 'power (under the confederation) to make the 4th article of the treaty, .and for want of power that article, is void, would if not be in the
 
 option
 
 of the crown of
 
 Great Britain
 
 to fay, whether the
 
 other
 
 articles, in-the
 
 fame
 
 treaty, fliall be obligatory on the
 
 Britijh
 
 nation ?
 

 I will now proceed to the conilderation of the treaty of 1783. It is evident on a perufal of it what were the great and principal ebje&s in view by
 
 both
 
 parties. There were
 
 four
 
 on the part of the
 
 United.
 
 States, to wit. , lit. An acknowledgment of their independence, by the crown of
 
 Great Britain.
 
 2d. A fettlementof their
 
 weflerft
 
 bounds. 3d. The right of fishery: and 4thly. The. free navigation of the Mijffippi- I here were
 
 three
 
 on the part of
 
 Great
 
 Britain, to wit„ lit. A recovery by
 
 Britijh
 
 Merchants,’ of the value
 
 infterling
 
 money, of debts contrafted, by the citizens- of America,
 
 before
 
 the treaty;2d. Reftitution of the confifcated ..property" of
 
 real Britijh-
 
 • fubjedts,- and of -perfons residents in diftridts in- pofieffion of the
 
 Britijh
 
 forces, and( who had not borne arms againil the
 
 United
 
 States; and a'
 
 conditional
 
 reftoration of the confifcated property of all
 
 other
 
 perfons: and 3dly. A prohibition of all
 
 future
 
 confifcations, and
 
 profecutions. ■
 
 The following fadts . were of.the moil public notoiiety, at the time when the treaty was made, and therefore muft have been very-well known to the gentlemen who aflented to it. lit. That
 
 Britijh
 
 debts, to a great amount, had been paid into fome of the State Treasuries, or loan offices, in paper money of very.little value, either under laws confifcating debts, or under laws autborifing payment of fuch debts in paper money, and difeharging the
 
 ■debtors,
 
 ad. That tender laws had exifted -in all the ftates; ■ and that by fomd of thofe laws, a tender and a refufal to acceptj by principal or factor, was declared 'an
 
 extinguishment of the debt. ■
 
 P'rom the knowledge that
 
 fuch
 
 laws had exifted there was good reafon to
 
 fear-
 
 that
 
 Jimilar
 
 laws, with
 
 Únjame
 
 or lefs confequences, might be again made, (and the fa£t really happened) and prudence required to guard the Britiih creditor againil them. 3d. That in fome of the States property, of any kind, might be paid,
 
 at an appraifement-¡
 
 jn di ¡charge of any. execution. 4th. That laws were' in force in fome of the States, at the time of the treaty, which prevented fuits by
 
 Britijh
 
 ere-' Editors. 5th. That laws were in force in other of the States, at the time of the treaty,- to prevent fuits by
 
 any perfm
 
 for a
 
 limited time.
 
 Ail thefe laws created
 
 legal
 
 impediments, of one kind or another, to the recovery of many
 
 Britiflj
 
 debts, contracted
 
 before
 
 the -war; and in many cafes compelled the receipt of property inftead of gold and filver.
 

 To fecure the recovery of
 
 Briti/h
 
 debts, it was by the latter part of the ¾⅛ article, agreed as follows, “ That all perfons
 
 *239
 
 who have any intereft in
 
 confifcated lands,
 
 by debts, fhould meet with no
 
 lawful impediment
 
 in the profecurion of their juft-rights.” This provision clearly relates -to
 
 delts
 
 fecuredby mortgages on lands in fee ftmpie, which were afterwards con-fiicatcd'; or to
 
 debts
 
 oh judgments,, which were a
 
 lien
 
 on lands, Tjdiich alfo were afterwards confifcated, and where fuch debts on mortgages, or judgments, had been paid into the State Treafuries, and the debtors difeharged. This ftipujation was abfolutelvneceflary if
 
 fucb debts
 
 were intended to be paid. The pledge, or fecurity by lien, had been confifcated and fold.
 
 Britijh
 
 fubjedts being
 
 aliens,
 
 could neither recover the poilef-fion of.lands by ejediment, nor foreclofe the equity of redemption ; nor could they claim the money fecured by a.mortgage, or have the benefit of a
 
 lien
 
 from a judgment, if the debtor had paid his'debt into the Treafury, and been difeharged. If a
 
 Britijh
 
 fubjedt, ■ in either of thofe cafes, profecuted his-juft right, it could only be in a court of juftice, and if any of the above caufes were fet up as a
 
 lawful
 
 impediment, the courts were bound to decide, whether this article of the treaty nullified the laws confifcating the lands, and alfo the purchases made under them, or the laws authorizing payment-of fuch debts to the State; or whether
 
 aliens
 
 were enabled, by this article, to hold lands mortgaged to them before the war. In all thefe cafes, it feems to me,. that the courts, in winch the cafes arofe, were the only proper authority to decide, whether the -cafe was within this.article of the treaty, and the operation and efte<3 of it. One inftance among many will illuftrate my meaning. Suppofe a mortgagor paid the mortgage money into the public Treafury, and
 
 afterwards
 
 fold the land, would not the
 
 Britifi:
 
 creditor, under this article, be entitled to a remedy againft the mortgaged lands ?
 

 The qth' article of the treaty is in thefe words : “ It is agreed that
 
 creditorj,
 
 on either fide, fhall meet with -no
 
 lawfid impediment to
 
 the recovery
 
 of
 
 the full value, in fterling money;, of all
 
 bona fide
 
 debts,
 
 heretofore contradtedU'
 

 Before I confidar this article of the treaty, I will adopt the following remarks, which I think applicable, and which may he . found in Dr.
 
 Ruthsrforth
 
 and
 
 Fattel. (2 Ruth.
 
 307
 
 to
 
 315.
 
 Fattel lib. 2, c.
 
 17.
 
 fs£i,
 
 263
 
 and 2¿X.)
 
 The intention of the framers of the treaty, muft be collected from a view of the
 
 whole
 
 inftrument, and.fiom the
 
 words
 
 made ufe of by them-to exprefs their intention, or from
 
 probable
 
 or
 
 rational conjetures.
 
 If the words exprefs the .meaning of the parties
 
 plainly, diftirMly,
 
 and
 
 perfectly,
 
 there ought to be no other means of -interpretation 5 -but if the words are obfeure,
 
 ox ambiguous-,
 
 or
 
 imperfect,
 
 íecourfe muft be had to
 
 other
 
 means.of interpretation, and in thefe
 
 three
 
 cafes-, we muft coiled! the meaning from the words^
 
 *240
 
 or from
 
 -probable or rational conjectures,
 
 or from
 
 both.
 
 When we colled: the intention from the
 
 tvords
 
 only, as they lie in/the writing before us, it is
 
 a literal interpretation
 
 ; and indeed if the tvords, and; the conftrudion of a writing, are
 
 clear
 
 and
 
 pre-
 
 cife, we can fcarce call it interpretation to colled: the intention of the writer from thence. The
 
 principal
 
 rule, to be obferved in
 
 literal
 
 interpretation, is to follow that fenfe, in refped both of the
 
 tvords,
 
 and the construction, which is agreeable to common ufe.
 

 If the recovery of the prefent debt is not within the cleár and tnanifeft
 
 intention
 
 and
 
 letter
 
 of the 4th article of .the treaty, and if it was not intended by it to
 
 annul
 
 the law
 
 o^Virginia,
 
 mentioned in the plea, 'and to deftroy the payment 'under it, and to
 
 revive
 
 the right of the
 
 creditor
 
 againft his
 
 origi. al debtor \
 
 and if the treaty cannot effed
 
 all thek
 
 things, I think the court ought to determine in favour of the Defendants in error. Under this impreftion, it is altogether unneceffary to notice the feveral rules laid down by the Council for the Defendants in error, for tbe
 
 conjlruction of
 
 the treaty*
 

 I will examine the 4th article of the treaty in its
 
 federal parts i
 
 and endeavour to affix the plain and natural meaning
 
 of
 
 each part.
 

 To. take the 4th article in order as it ftands.
 

 iff. “ It is agreed,” that is, it is
 
 exprefsly
 
 contraded ; and it appears from what follows, that
 
 certain
 
 things ihall
 
 not
 
 take place. This ftipulation is
 
 direct.
 
 The diftindion is. felf-evi-dent, between a thing thatfhall
 
 not
 
 happen, and an agreement that a third power fhall prevent a certain thing being done! The
 
 firjl
 
 is obligatory .on the
 
 parties contracting.
 
 The
 
 latter
 
 will depend on the will of
 
 ■another
 
 ; and although the parties . contrr.ding, had power to lay him under a
 
 moral
 
 obligation for compliance, yet there is a very great difference in the two cafes. This diverfity appears in'the treaty.
 

 2d.
 
 “
 
 That creditors on either fide,” without doubt meaning
 
 Britijb and American creditors.
 

 3d. “ Shall meet with no
 
 lawful
 
 impediment,” that is, with no obftacle (or bar) arifing from the common law, or ads of Parliament, or ads of Congrefs, or ads of any of the States, then in exiftence, or thereafter to be made, that, would, in any manner,operate to prevent the recovery
 
 offucb
 
 debts, as the treaty contemplated. A
 
 lawful
 
 impediment to prevent a recovery or a dei>t can only be
 
 matter of law
 
 pleaded in bar to the adlion. If the. word
 
 lawful
 
 had been omitted, tjie impediment would not be confined to matter of
 
 law.
 
 The prohibition that
 
 no lawful
 
 impediment fhall be inUrpofed, is the fame as that
 
 all
 
 lawful impediments {ball be
 
 removed.
 
 The meaning cannot be fatisfied by the removal of
 
 one
 
 impediment, and leaving another; and
 
 a
 
 
 *241
 

 fortiori
 
 by taking away the
 
 lefs
 
 and leaving
 
 tint greater.
 
 Thefe words have both a
 
 retrofpective
 
 and
 
 future afpect.
 

 4th. “To the recoyery,” that is,, to the right of action, judgment, and execution, and receipt:.of the money, without impediments in courts of juilice, which could only be by plea, (as in the prefent cafe) or by proceedings,
 
 afler
 
 judgment, to compel receipt of paper money, or property, inftead of Herding money. The word
 
 recovery
 
 is very comprehenlive, and operates, in the prefent cafe, to give remedy from the commencement of fuit, to the receipt of the money.
 

 5th. “ In the full value in
 
 Jlerling
 
 money,”' that is,
 
 Britijh-
 
 creditors ihall not be obliged to receive
 
 paper money, jor property at á valuation,
 
 or any thing elfe but the full value of their debts, according to the exchange
 
 with Great Britain.
 
 This provifion is.clearly
 
 rejlrilled
 
 to
 
 Britijh
 
 debts,
 
 controlled before the treaty,
 
 and cannot relate to debts contracted
 
 afterzvards,
 
 which would.be difcliargeable according to contrail, and the ■laws of the State where entered into. This provifion has al-io a
 
 future
 
 afpeit in this particular, namely, that no
 
 lawful.
 
 impediment, no law of any of the States made
 
 after
 
 the treaty, ■ihall oblige
 
 Britifio
 
 creditors to receive their debts,
 
 controlled before
 
 the treaty, iri
 
 pape
 
 /-.money, or
 
 property at afpraifement,
 
 or in any thing but the value in iterling money. . The obvious intent of thefe words was to prevent the operation of
 
 past
 
 and
 
 future tender
 
 laws; or-
 
 past and future
 
 laws, authorizing the difeharge of
 
 executions
 
 for fuch debts by
 
 property át a valuation.
 

 6th.- “ Of all
 
 pona fide
 
 debts,” that is, debts of every fpe-cics, kind, or nature, whether by mortgage, if a covenant-therein for payment; or by
 
 judgments,
 
 fpecialties, or fimple
 
 contrails.
 
 But the debts contemplated w'ere to be
 
 bona fide debts,
 
 that is,
 
 bona fide controlled befipre
 
 the peace, and con - trailed with good faith, or honeilly, and without covin, and not kept on'foot fraudulently.
 
 Bona .fide
 
 isa
 
 legal-technical
 
 expreílion ; and the law of
 
 Great Britain
 
 and this country has annexed a certain idea,to it. It is a term ufed in flatútes in
 
 England,
 
 and in ails of Afiembly of all the States, and fig-nifies a thing done
 
 really,
 
 with a
 
 good faith,
 
 without/h?W, or
 
 deceit,
 
 or
 
 collufton,
 
 or
 
 trust.
 
 The words
 
 bona fide
 
 are
 
 restric-five,
 
 for a debt may be for a valuable
 
 confideraiion,
 
 and yet not
 
 bona fide.
 
 A debt mu ft be
 
 bona fide
 
 at the
 
 time of its commencement,
 
 or it never can become fo
 
 afterwards.
 
 The words
 
 bona fide,
 
 were
 
 not prefixed
 
 to deferibe the
 
 nature.oí
 
 the debt át
 
 the date of the treaty,
 
 . but the
 
 nature of
 
 the debt
 
 at the tbne it ivas contracted.
 
 Debts created
 
 before
 
 the war, were almoft the only debts in the- contemplation of the treaty; although debts’contracted
 
 during the zvar
 
 were covered by the general provifion, taking in debts from the moil diftant period of time,
 
 *242
 
 to the date of the treat". The recovery, where no
 
 ¡awful
 
 impediments, were to be interpofed, waste have
 
 two
 
 qualifications : -lit. The debts were to be
 
 bona fide contracted-,
 
 and, 2d, they were to be contracted
 
 before the
 
 -peace. 1
 

 7th. “ Heretofore contracted,” that is, entered into at any period óf time
 
 before the date of the-treaty y
 
 without regard to the length or diftance óf time. Thefe words are
 
 deferiptive
 
 of the
 
 particular
 
 debts that might be recovered; and
 
 relate back to the time fiuch debts were contracted.
 
 The
 
 time
 
 of the
 
 contract
 
 was plainly to deftgnate the
 
 particular
 
 debts ■ that might be recovered. A debt entered into
 
 'during the
 
 war, would not have been recoverable, unlcfs under this defeription of a debt contracted at
 
 -any thne before, the treaty.
 

 If the words of the 4th article taken fepqrately, truly bear the meaning 1 have, given them, -their fenfe
 
 collectively,
 
 cannot . be miftaken, and rn.uft be the
 
 fame.
 

 The next enquiry is, whether the debt in queftion, is one of •thofe, defended in this article. It is-vary clear that the article contemplated
 
 no debts
 
 but thofe contraded
 
 before the treaty
 
 ; and
 
 no debts
 
 but only
 
 thofe
 
 to the recovery whereof fome
 
 lavs
 
 -
 
 ful
 
 impediment might be interpofed. The prefent debt was-contrafted
 
 before
 
 the war, and. to the recovery of it a
 
 lawful
 
 impediment, to wit,' a law of-
 
 Virginia
 
 and payment under it, is pleaded in bar, There can be' no doubt that the debt fued for, is within the defeription, if 1, have given a proper interpretation of the words. If the treaty had been filent as
 
 to debts,
 
 and the law of
 
 Virginia
 
 had
 
 not
 
 been made, I' have already. proved that debts would, on peace, have
 
 revived
 
 by the
 
 law of nations.
 
 This alone {hews -that the
 
 ohly impediment
 
 to the recovery of. the debt in queftion, is the
 
 law of
 
 Virginia, and the payment under.it; and the treaty relates
 
 to. every 'kind of legal impediment.
 
 ■ -
 

 But it is aiked, did the 4th article intend to
 
 annul
 
 a
 
 law
 
 of the ftates ? and deftroy rights acquired under it ?
 

 I anfwer, that the 4th árticie'did intend to deftroy áll
 
 lawful' impediments, pafi
 
 and
 
 future
 
 ; and that the law of
 
 Virginia,.
 
 and the paj'ment under it, is a lawful impediment; and would bar a recovery, if not deftroyéd by this -article .of the treaty, This 'itipuiation could n.ot intend only to repeal .laws that ere-' .ated legal impediments* to the recovery of the debt ( without •refpect to the mode of payment) beoáufe the
 
 mere- repeal
 
 of ⅛ few would not deftroy acts done, and rights acquired, under' tire law*
 
 during it 's exijlence and before the repeal.
 
 This right to repeal was only admitted
 
 by the council for the Defendants in error,
 
 becaufe a repeal would not affeCt their cafe; but on the-fume ground that a treaty .can repeal a law of the ftate, it can •
 
 nullify
 
 ¡tí I have already proved,, that a treaty can
 
 totally
 
 cm-
 
 *243
 

 nth Hate
 
 any part of the
 
 Confutation
 
 of any of the individual flates, that is contrary to a treaty. It is admitted' that the treaty intended and did annul fome laws of the ftate?, to wit, any laws,
 
 paji or future,
 
 that authorifed a tender of
 
 paper, money lo
 
 extinguiih or difcharge the debt, and any laws,
 
 paji
 
 or future, that authorifed' the dilcharge of executions hy paper money, or delivery of property at appraifement; becaufe if the words
 
 sterling money
 
 have not this effect, it cannot be ihewn that they have any other. If the treaty could nullify
 
 fome
 
 .laws, it will be difficult k> maintain.that it- could not equally
 
 annul
 
 others. .
 

 It was argued, that the 4th article was neccifary to revive debts which had not been paid, as it was
 
 doubtful,
 
 whether debts
 
 not paid
 
 would revive on peace by the
 
 law of nations.
 
 I answer, that the 4th article was notneceffary on
 
 that account,
 
 be-* caufe there Was
 
 no doubt
 
 that debts not paid do. revive.by-the
 
 law of
 
 nations; as appears from
 
 Bynkerjhock,
 
 Lee,' and Sir
 
 Thomas Parker.
 
 And if neceffary, this article would not have this effedt, becaufe it revives no debts, but only thofe' to which fome
 
 legal
 
 impediment might be interpofed, and there could be no legal impediment, or bar, to the recovery, after. -- peace, of debts
 
 not paid,
 
 during the war to the ftate.
 

 . It was contended, that the pro.vifi.on is, that creditors, ihall recover, &c. and there was no
 
 creditor
 
 at the time of the treaty, becaufe there was then no
 
 debtor,
 
 he having been legally difeharged.
 
 The creditors'
 
 defcribed'in the treaty, were • not creditors generally, but only thofe with whom debts had been contra&d,.,at fome time before .the treaty; and is a de-feription of perfons, and not of their
 
 rights-.
 
 This adhering to the letter, is to deftroy the plain meaning of the proviiion; becaufe, if the treaty' does not extend to debts paid into the ftate treafuries, or loan offices, it is yery clear that
 
 nothing
 
 was done, by the treaty as to thofe debts, not .even fo much as was ftipulated
 
 for Royalists',
 
 and Refugees, to wit, a
 
 recommendation of
 
 restitution. Further, by this cor.ftruftion, nothing was done for
 
 Britijh
 
 creditors, becaufe the law of nations fecured a recovery of their debts, which had not been confif-cated and paid to the ftates; and if the debts paid in paper money, of little value, into the ftate treafuries, or loan offices, were not to' be paid to them, -the article was of ho .kind of value to them, and they were deceived, The article relates either to debts
 
 not paid,
 
 or, to debts
 
 paid
 
 into the treafuries, or loan offices. It has no relation to the
 
 first,
 
 for the reafons above affigned; and if it does not include the latter jt relates tq nothing^
 

 It was faid that the treaty fecured
 
 Britijh
 
 creditors from payment in paper money. This is admitted,, but it is by force
 
 *244
 
 and operation of the
 
 wordsin sterling money f
 
 but then the words, “
 
 heretofore ' contractedf
 
 are to have
 
 no effect zvhatfo- ■ ever
 
 ; and it'is thofe very words,- and thofe only, that fecure the recovery of the debts; paid to the ,ftates ; becaufe no lawful-impediment is to-be allowed to ‘prevent the recovery of
 
 debts contracted 'at any time before the treaty.
 

 But it was alledged, that the 4th article only ftipulates, that there íhall be no
 
 lawful
 
 impediment, &c. bur that a law of the ftate was firft neceiTary.tO i?««zz/ thqjaw creating fuch impediment;'and that the ftate is under a
 
 moral
 
 obligation' to país fuch ■ a law; but until it is doné, the impediment remains,
 

 I confider the 4th article in this light, that it-is not a ftipu-Jation that
 
 certain
 
 a¿ls íhall be done, and that it was necefiary for the legiilatures of individual ftá.tes, to do thofe a£ts ; .but that it is .an exprefs agreement, that certain things íhall
 
 hot
 
 be permitted the
 
 American
 
 courts of juftice; and that- it is a .contradi-, on behalf of thofe courts,, that-
 
 they
 
 will not allow fuch afis to' be pleaded in bar, to prevent árecovery of' certain
 
 Britijh
 
 debts. Creditors are-to meet with no lawful impediment,
 
 See.”
 
 As creditors can only fue for the recovery of their debts, in courts of j.uilice; and it is only in courts of juftice that a
 
 legal
 
 'impediment can be fet up by way .of plea, .in bar of their a iions; it appears to me," that
 
 the■ 'courts
 
 are bound'to overule every
 
 fuch
 
 plea, if contrary to the treaty. A recovery of a debt can only be prevented
 
 by a plea in bar to the action.
 
 A recovery of a debt in fterling' money, can only be prevented by a like plea in-bar to the adiion, as tender and . ■ refufa), to operate as an extinguiíhment.
 
 After■
 
 judgment, páyment thereof in
 
 sterling
 
 money can only be prevented by ibrne proceedings under fome law/that authorifes the debtor to difeharge an
 
 execution
 
 in paper money, or in property, at .a valuation, in al! thefe, and • fimilar cafes, it appears to me, that the
 
 courts
 
 of the
 
 United States
 
 are bound, by the treaty, to interfere. .' No one can doubt that a treaty may ftipulate, that certain a£ts íhall be done by the Legiflature ; that other a£ts íhall be done by the Executive; and others by the Judiciary. In the ^th article it is provided, that no
 
 future, profe-cutions
 
 íhall be commenced agai nit any perfon, for or byrea-
 
 foh of the part
 
 he took in . the war. ' Under , this arficle the American courts of juftice difeharged the. profecutions, and the perfons, on receipt of the treaty, and the proclamation of Con-grefs. j
 
 Dali. Rep,
 
 233.
 

 If a law of the State to
 
 annul
 
 a former law was
 
 firjl
 
 necefr fary, it muft be either on the ground that-/¿¿
 
 treaty
 
 could not
 
 annul
 
 any
 
 lava
 
 of a State; or that the words ufed in the treaty Were not explicit or effectual for that purpofe. Our Federal Coiiftitution eftabliihes the power of a treaty over the con-
 
 *245
 
 flitution and laws of any of the States; and I have ihewn that the words of the 4th article were intended, and are fuffi-cient to
 
 nullify
 
 the
 
 .lava
 
 of
 
 Virginia-,
 
 and the payment under it. It was contended-that
 
 Virguláis
 
 interefted in this queftion,' and ought to compenfate the Defendants in error, if obliged to pay the Plaintiff under the treaty. If
 
 Virginia
 
 had a
 
 right
 
 to receive the money, which I hope 1 have clearly eftabliihed, by what law is ihe obliged to return it ? The treaty only fbeaks of the
 
 original debtor,
 
 and, fays nothing about a recovery from any of the States.
 

 It was faid that the defendant ought to
 
 be fully indemnified, if the treaty
 
 compels him to pay his debt over again ;' as his rights have been facrificed for the
 
 benefit of
 
 the
 
 public.
 

 That Congrefs had the power to facrifice the
 
 rights
 
 and
 
 in-ierejls of private
 
 citizens to fecure the
 
 fáfeiy
 
 or profperity of the public, I have no doubt; but the immutable principles of juftice; the-public faith of the States,-that confifcated and received
 
 Britijh
 
 debts, pledged to the debtors ; and the rights of the' debtors violated by the treaty;.all combine to prove, that ample compenfation ought tobe made to all the debtors who have been'injured’by the treaty for the benefit of
 
 the public.
 
 This principle is recognized by the Conftitution, which declares, “ that
 
 private
 
 property ihall not be taken for
 
 public
 
 life, without
 
 juji compenfation,,.
 
 See
 
 Vattél. lib.
 
 1.
 
 c.
 
 20.
 
 f
 
 2441'
 

 Although
 
 Virginia
 
 is not bound-to make compenfation to ■ the debtors, yet it evident that they ought to be indemnified, and it is not to be fuppofed, that thofe whofe duty it may be to make the compenfition, will permit the
 
 rights
 
 of our citizens to bo-iácrificed to a
 
 public
 
 objeEl, without the fulleft indemnity. .
 

 On the beft inveíligation I have been able to give the 4th article of the treaty, i cannot conceive, that the wifdom of tnen could exprefs their meaning in more accurate and intelligible words, or -in wprds more proper and effeitual to carry their
 
 intention
 
 into execution. ' I am fatisfied, that the words, - in their natural import, and common ufe, give a recovery to the
 
 Britijh
 
 creditor from his original
 
 debtor
 
 of the debt con-trailed
 
 before
 
 ..'the treaty, notwithstanding the payment thereof into the public treafuries, or loan offices, under the authority .of any State law; and, therefore, I am of opinion, that the judgment of the Circuit-Court ought to begeverfed, find that .judgment ought to be given, on the demurrer, for the Plaintiff in error; with the coils in the Circuit'Court, and.the coils of the: ap'peá!.
 

 ' / Paterson,
 
 Juftke.t
 

 The prefect fuit is inftituted on a /bond bearing date the 7 th of
 
 July-ii']^,
 
 and executed by
 
 Daniel-Lawrence Hylton &■ Co.
 
 arid
 
 Francis Eppes,
 
 citizens of the?, State of
 
 Virgipia,
 
 to
 
 Jefiph Barrel
 
 and
 
 IVillism Jones,
 
 fub-
 
 *246
 
 jedts of the King of
 
 Great
 
 Britain, for the payment of £2,976
 
 1 if
 
 6d. Britijh, or ftetling, money.
 

 The. Defendants, among-other pleas, .pleaded, ift. Payment; on which iffue is joined;
 

 2d. That 31 n 1-9 dollars, equal to,
 
 £
 
 933 14/ p'd. part of the debt mentioned in the declaration, were, on the 26th of-
 
 April
 
 1780, paid b'y them into the loan office of
 
 Virginia
 
 pur-fuant to an adt of that State, paffed the 20th of
 
 October
 
 1777, entitled, “ An adt for fequeftering
 
 Britijh
 
 property, enabling “ thole indebted to
 
 Britijh
 
 fubjedts to pay off fuch debts, and “ diredtirrg the proceedings in fuits where fuch fubjedts are “ parties”. The'material fedtion of ‘the adt is recited in the plea.' .
 

 • ■ To this plea- the Plaintiffs reply, and.,fet up the 4th article of the treaty, made the 3d. of
 
 September
 
 1783, between the
 
 United States
 
 and his
 
 Britannic
 
 .Majefty, and-the Conftitution of the
 
 United States
 
 making treaties' the fupreme law of the land.
 

 The rejoinder fets forth, that the -debt in the declaration ■ mentioned, or fo much thereof as is equal to the fum of
 
 £
 
 933
 
 lip
 
 od. was not a
 
 bona Jide
 
 debt'due a:_d owing to the Plain- ' tiffs on the 3d of
 
 September
 
 1783, becaufe the Defendants had, on the 26th of
 
 -April
 
 1780, paid, in part thereof, the, fum of 3111- 1-9 dollars into the loag office of Virginia;• and obtained a certificate and receipt therefor purfuant to-the diredtions of the faid adt; without that, that the faid treaty of ?eace, and the Conftitution- of the
 
 United States
 
 entitle the . laintiffs to maintain their adtióri .againft the'Deferidants for fo much of the faid debt in the declaration mentioned as.is equal to £ 933 14/ - _ ,
 

 _ , To this rejoinder the Plaintiffs demur.
 

 The defendants join in demurrer.
 

 On this ¡flue in law judgment was.entered for the Defendants in the Circuit Court for the Diftridt of
 
 'Virginia.
 
 A Writ .of Error has been brought, and the general errors are affigned. •
 

 The queftion is, whether the judgm nt rendered in the Circuit Qourt be erroneous? I mall not purfue the range of diicuffion, which was taken by the Counfel on the part of the Plaintiffs'in error. | do.not deem it neceflary to enter on the queftion, whether the Legiflature of
 
 Virginia
 
 had authority to make an adt, confifcating the debts due from its citizens to- the fubjedts óf the king of
 
 Great
 
 Britain, <?r whether'the authority in fuch cafe tvas exclufively in Congrefs. I ihall read and make a few obfervations on the adt, which has been pleaded in bar, and tlien pafs to the confideration of the 4th
 
 *247
 
 article of the treaty. The firft .and third fedtions are the. only parts of the. adt nec efiary to be corifidered. "
 

 lit. “ Whereas clivers perfons, .fubjefts of
 
 Great Britain,
 
 “ had, during oúr connexion with that kingdom, acquired eL “ tates, real and perfonal, -within this commonwealth, and had “ alfo become entitled.to debts
 
 to
 
 a ccnfiderable amount, and “• fome.of them had commenced fuits for the recovery of.fuch “ debt's before the prefent troubles had interrupted the admi- “ n.iftration of juftice, which fuits were at that time depending “ and undetermined, and luch eftates being acquired and debts “ incurred, und.er the fandiion of the laws and of.the connexion- “ then fubfifting, and it . not being known that their fove- “ reign hath ■ as yet fet the example of confifcating.debts and “ eftates-; under the like circumftances, the public.faith; and- “ the law and ufages of- nations require, that they .ihould not “ be confifcáted on our part, but the fafety
 
 of
 
 the.
 
 United
 
 K
 
 States
 
 demands, and the fame law and ufages .of nations will “ juftify, that we ihould not ftrengthen the'hands of our ene- “ mies during.the continuance of the prefent war, by recnit- “ ting to them the profits or proceeds of fuch eftates, or. the . “ intereft or principal.of fuch debts.”
 

 3d. “ And be -it further enadied, that it ihall and may be . “ lawful for any citizen of this commonwealth, owing money “ to a fabj edt of
 
 Great
 
 Britain, to pay the fame, or any part “ thereof, from time to time, as he fhalj 'think fit, into the “ faid -loan office, taking thereout a certificate for the fame.in “ the name of the creditor, with an endorfement under the “ hand of the comrriiffioner of the faid office. ex,preffing the cc ’name of the payer, and ibaft deliver fuch'certificate to the “ Governor and Council, whofe receipt ihall difehar-ge him “ from fo much' of the debt. And the Governor and Coun^ “ cil .ihall in,like manner lay before the General Aflembly, u once in .every year, an account of thefe certificates, fpeci- “ fying the names of the perfons by and for whom .they were ■. u paid, and ihall fee to the fafe-keeping of the fame, fubjedt “ to the future diredtion of the Legiflature.”
 

 The ■ adt doesmot confifcate debts due to BritiJ).> fubjedh*
 

 The preamble reprobates the dodtine as being inconiiftervt. wi.th public faith, a.iid the law and ufages of nations. TJife •payments made into the loan office were voluntary snd • not cornpulfive; for it was in the option of the debtor to pay or not. The enadting claufe will admit of a conftrudtion in-full . confiftency with, the preamble ; for, although the certificates ■ were to be fubjedt to the future diredtion of the Legiflature, yet -it was under the exprefs declaration, that there ihould bé ' no confifeation, unlefs the King of
 
 Great Britain
 
 ihould fet the example; if he ihould confifcate debts due to the citizens .
 
 *248
 
 of
 
 Virginia,-
 
 then the Legiilat'ute of
 
 Virginia
 
 would cor.meats debts due. to
 
 Britijh
 
 fubjefts. But the King of
 
 Great Britain did not
 
 confifcgte debts on his part, and the Legidature of
 
 Virginia
 
 have not confifc'ated debts on their part. It is, however, faid, that the payment' being made Under the act, the faith 0
 
 f Virginia
 
 is plighted. True—butte whom is it plighted —to the creditor, or debtor—to the alien enemy, or to its own citizen, who made-the voluntary payment ? Or-will it be'fha-ped and varied according to the .event—if one way,- then to the'creditor}'if another, then to the debtor. Be thefe points as they may, the Legiflature thought it expedient to declare to what amount
 
 Virginia
 
 -fhould be bound-for payments-fo made. The aft for this purpofe was palled onthe^d of
 
 'January, IjSo
 
 ; and'is-entitled 44 An' áft concerning monies, paid jnto u the public loan office, in payment of
 
 Britijh
 
 debts.”
 

 “ Seftion 1. Whereas;by an aft of the General Affembly, 44 entitled 4 An aft for fequeftering
 
 Britijiy
 
 property, enabling 44 thofe-indebted to
 
 Britifi.’}
 
 fubjefts, to pay off-fuch debts, and 44 direfting the proceedings in fuits .where fuch fubjefts are ■“ parties}” i't is among other things provided, that it'ihall and “ maybe lawful for any- citizen of this commonwealth, owing 44 money to afubjeft of
 
 Great
 
 Britain, to pay the fame,'or any 44 part thereof, from time to time, as he ihall think fit, into the 44 faid loan office, taking thereout a certificate for the fame,- in. 44 the name of the creditor; with an indorfement under the hand 44 of the commiffioner of the faid office,- expreffing the namebf “.the payer; and íhail-deliver fuch certificate to the governor 44 and council, whofe receipt ihall'difcharge him from fo much 44 of thfa d.ebt; and the Governor and Council ihall, in like man-44 ner, lay before the General Affembly, once in every -.year, an “ account of thefe certificates, fpecifying the names of the per- “ ions, by and for. whom, they were paid, and ihall fee tothefafe “ keeping of the Tame, fubjeft to the futuredireftion of the Le-44 giflature.
 

 44' Seft.
 
 2.
 
 And whereas it belongs not to the Legislature to 44 decide particular queftions, of which the judiciary have cogni-44 zancé, and it is therefore unfit for them to determine, whether .44 ⅜-e payments fo made into the loan office, as aforeuid, be good. 44 or void between the creditor and debtor. But it is expedient - 44 to declare to what amount this commonwealth may be bound 44 for.the payments aforefaid. Be it enabled .and declared, 1 hat' “ this-commonwealth ihall, at no time- nor in any event or con-44 tingency, be liable to any .per fon or perfons wbatfoever, for 44 any fum, on account of the payments aforefaid, ether than the 44 value thereof when reduced by th'efcalc of depreciation, efta-44 la bribed by one other aft of the General Aflcmbly, entitled 44 An abt direfting the mode of adjufiing and fettling the’pa
 
 *249
 

 y-
 
 merit of certain debts and contrails, and for .other • piirpofes, “ with intereft theteon, at the rate of fix per centum per an- “ num; any law, ufage, cuftom, or airy adjudication or con- “ ftruition of the firft recited ait already made, or hereaf-⅛ to be máde notwithftandipg.”
 

 On the part of the Defendants; it has been alfo urged, that it is immaterial whether the payment-be voluntary or compul-fivej becaiife the payer, on complying with thé’ direitions of the aitj Ihall be difcharged from fo much of the debt. Be it fo. If the Legislature had authority to make the ait, the Con-grefs could, by treaty, repeal the ait, and annul every thing done under it. This leads iis to confider the treaty and its operation. Treaties mutt be conftrue'd in fuch manner, as to effeituate the intention of the parties; The intention is to be colleited from the letter and fpirit of the inftrument, and may be illuftrated and enforced by confiderations deduciblefrom the Situation of the parties; and the reafonablénefs, juftice, and nature of the thing, for which provifion-has been made. The 4th article of the treaty gives the text, and runs in the following words:
 

 “ It is agreed, that creditors on either fide, ihall meet with no ⅛ legal impediment to thérecovery of the full value in fterling “ money, of all
 
 bona fide
 
 debts heretofore contracted/’
 

 The phrafeology made ufe of, leaves in my mind no room to hefitate as to the intention of the parties. The'terms are unequivocal and univerfal in their Signification, and dbvioufly > point to and comprehend all creditors, and all-.debtors, previ-oufly to the 3d of September, 1783. In this article there ap*-péars to be a Selection of expreilions plain and extenfive in their import, and admirably calculated to obviate doubts, to. remove difficulties, to defignate the objects,- and afeertain the intention of the contending powers, and, in fhort, to meet and, ■provide for all poffible cafes that could arife under the head or debts. The words “creditors on either fide,” embrace every defeription of creditors, and cannot be limited or narrowed down to fuch only, whofe debtors had not paid into the loan office of
 
 Virginia.
 
 Creditors muft have debtors; debtors is th'e correlative term. Who are thefe debtors ? On the part of the Defendants in error, it fias been contended, that
 
 Virginia
 
 is the fubftituted debtor, fo far as repedts debtors, who may have paid money into the loan office under' its laws; Bur the Idea, that the, treaty may be Satisfied by fubíti-, tuting the ftate of
 
 Virginia
 
 in the Head of the original debtor, is far fetched, and altogether inadmiffible. The terms in which the article is exprefTed, clearly evince a contrary intention, and naturally and irrefiftably carry the" mind-'bacic to the . debtor; for, as between the creditor and rhe
 
 *250
 
 itate of
 
 Virginia,
 
 there was no expréfs and pre-exifting ftipii-latfon or debt. Befides, what lawful impediment was to be removed out'of the way of the creditor, if
 
 Virginia
 
 was the fubftituted or felf-created debtor ? Did this •claufe’make
 
 Virginia
 
 liable to a profecution for the debt ? Is
 
 Virginia
 
 now finable by fuch
 
 -Britijh
 
 creditor? No; he would in fuch cafe be totaily remedilefs, unlefs the nation of which he is a fubjecl, would interpole in his behalf. The wort's “ ihall meet with no. lawful impediment,” refer to legiílative arils, and every thing done under them, fo far as the creditor might be affc-Sed or obftrucfted in regard either to ids remedy or right. All-lawful impediments, of whatever kind, they might be, whether they-rclated to perfonal difabilities, or confifcatioris, fequef-trations, or payments into loan Offices or treafuries, are reino-vedi No aril of 'any ftafe legiflature, and no payment made under fuch- act into -the public coffers, ihall obftrurit the credit- or in his courfe of recovery againfthis debtor; The aril i'tfelf is a lawful impediment, and therefore is, repealed ; the payment under the ait is alfo a lawful impediment, and therefore .¡s, made void. The article is to be conftrued according to the fubjerit matter or nature of Ae impediment; it repeals .in the firft iriftance, and nullifies in the fecund. Unlefs this be the conftrurilion, it is not true, that the creditor fha.ll meet with no legal in.pediment to the recovery ot his debt. Does not the plea in the prefent cafe contradiril tjie treaty,,arid raife an impediment in the way of recovery, when the treaty declares, there-lha-ll be- none ? Pa-yinents made in paper money into loan. 0Fees, and treafuries, were the principal impediments to.be removed, and rnifehieis to he redreffed. The article ritakes provifion accordingly. It ftipulates, that the'' creditor Ihall recover the fall value of his debt in fterling money; hereby,iecuiing and guarding him- agairift-all payments' in paper money. Suppofe the creditor ihould call- on
 
 Virginia
 
 for payment—what Wo.u-ld it. be—the paper money .paid into the loan-office,. of its- value. Would'this be a compliance with the article ? In the one . cafe, the-money being cried down and dead, is no.better than•• w.afte paper; and in the other, the payment, when, reduced by the'table"of depreciation,, would be in-coafiderable, md in--.many cafes not more than. fix-pence in. the pounfif" Can- this be-.called' payment to the- full' value. pfAfe '• debt in.-ften'ing.money.?. The fiibfequent expref--lions- in-; the article,, enforce' the preceding obfervatiüns, and mark ¡the. will ■ and- intention; of the conrradfing'{Jarcies, in the moil clear and. precife terms. Theconcluding words are-, w all'
 
 bpn^idc-
 
 debts heretofore con trariced. ’ ’ In the conftruc-,⅜⅛⅛. ofi conCtedis,. words, aie to- be taken in- their natural and obvious, meaciog,; ur.kf&fcms good reaíba be affigned, ,to ihew,.' '
 
 *251
 
 that they fhould be underftood in a different fenfe, Now, if a perfon, in reading this article, fhould take the words in thejr common meaning, and as generally understood, could he miftake the intention of the parties ? Their defign Qnqueftionably was, to reftore the creditor and debtor to their origina! fíate, and place them precifely in the fituation they would have flood, if no war had intervened, or aft of the Legifiature of
 
 Virginia
 
 had been pafied. The impediments created by Legifiative ails, and the payments made in purfuance of them, and all the evils ' growing out of them, were, fo far as refpeited creditors, done away and cured. This is the only way in which all lawful impediments'can be removed, and all debts, con ( rafted before the .date of the treaty, can be recovered to their full value, by the creditors againil their debtor'. It has, however, been urged, that this article muft be reftrided to debts-exifting and due at the time of making the treaty; that the debt in queftion was difcharged, becaufe it has been paid into the Loan Office,-agreeably to law ; and that thwtreaty ought not tobe confirmed fo as to renovate or revive it. To enforce this .objection, the rule laid down by
 
 Vattel
 
 was relied on, •“ that the fíate of things at “ the inftant of the treaty, is to be 'held legitimate, and any “ change to be made in it requires an exprefs fpccification in “the treaty; confequently aft things not mentioned in the “ treaty, are to remain as they were at the conclufion of-.it.”
 
 Vatt. B.
 
 4.
 
 c. 2. f.
 
 ⅞1. Thefirfl part of the ohjeftion has been already anfwered; for it is within both the letter and fpirit of the inflrument, that the creditors fhould be reir.ftatcd, and, of courfe, that the debtors fhould be liable to pay. The aft of Virginia, and the payment under it have, fo far as the creditor is concerned, no operation, and are void. There is no difficulty in .anfwering the objection arifing from'the paflage in
 
 Vattel..
 
 The univerfality of the terms is equal to an exprefs fpecification in the treaty, and indeed includes it. For it'is fair and conclusive reafiminc, that-if any deicription of debtors or clafs of cafes was intended to be excepted, it would have-been fpecified in the inflrument, and the words, “ that credi-,c tors on either fide, fhall meet with no lawful impediment to “ the recovery of the full value in ftcriing money of all debts “ heretofore contracted,” would not have been made ufe of in .the unqualified manner, in .which they Hand in the treaty. Another article in the treaty now under review, v/fti ferve by way of illuftration.
 

 “Article VLÍ. There íhallhe a firm and perpetual peace, “between his
 
 Britannic
 
 Majefty and the faid States, and between the fubjects of the one and the citizens of the other, wherefore “ all hoftilitie?.both by fea and land jhall then immediately ceafe: ‘■‘‘.all prifoners on both tides fhall beLt at liberty, and his
 
 Britannic
 
 
 *252
 
 “ Majefty ihall, with all convenient fpeed, and without cauf- “ ing any deftruftion, or carrying away any negroes or other “ property of the
 
 American
 
 inhabitants, withdraw all his armies, “ garrifons and fleets from thefáid
 
 United States-,
 
 and from
 
 every
 
 “port, place and harbour within the fame; leaving in all fortifi-' “cations the
 
 American
 
 artillerythaf may be therein. And ihall “alfo order and caufe all archives, records, deeds, and papers, “belonging to any of the faid States, or their citizens, which ⅛ “ the courfe of the war may have fallen into the hands of his officers, to be forthwith reftored and delivered tothé proper States “and pérfons to whom they belong. ” Would it be an objection on the part of his
 
 Britannic
 
 Majefty, that the ftate.'of things at the inftant of the treaty is tobe held legitimate, and any change to be made in it, requires an exprefs fpecification ? That the forts are not. fpecified, and therefore npt to be given up ? The objection would beconfidered as futile and evafive. The an-fwer would be, that there is no doubt, becaufe. the expreifions are general; comprehend the forts, and are equal to an exprefs fpecification.' So in the prefént cafe, the univerfality of the terms are equal to a fpecification of every particular debt, or aq enumeration of every creditor and debtor, It is the fame thing as though they had been individually named,. All the creditors on either fide, without diftinCHon; muft have been contemplated by the parties in the fourth article. Almoft every, word, fe-parately taken, is expreffiveof this idea, and when all-thé words are combined and taken together, they remove every particle of doubt. But if the clafs of
 
 Br.itijh
 
 creditors, whofe debtors have paid into the Loan Office of Virginia, are not comprehended in the fourth article, then they pafs without redrefs, without notice, without fo much as a recommendation in their favour. The thing is incredible.' Why a diftinCtion—why ihould the creditors, whofe debtors paid into the Loan Office, be in a worfe fituation than the creditors, whofe debtors did not thus pay ? The traders, and others of this country,■ were largely indebted to the merchants of
 
 Great Britain.
 
 Topro- , vide fof the payment of thefe debts, and give fatisfa&ion to thi§ • clafs of‘fubjeCts,'muft have been a matter‘of'primary importance to the
 
 BritiJI)
 
 miniftry. ' This, doubtlefs, is at all times, and in all fituations, an objeCt of moment to a commercial country, The opulence, refources, and power of the
 
 Britijh
 
 nation, may, in no final] degree, be afcribed to its commerce; it is a nation of manufacturers and merchants. To proteCt their interefts and provide for ’the payment of debts due to them, efpecially when thofe debts amounted to an immenfe fum, could not fail of arrefting .the attention, and calling forth the utmoft exertions of the
 
 Britijh
 
 cabinet. A meafure of this kind, it .is eafy to perceive, would be purfued with unremitting
 
 *253
 
 diligence and ardour; facrifices would be made to enfure its fuccefs-; and, perhaps, nothing ihort of - extreme neceííity would induce them to give it up. But, if the debts, which have been confifcated, or paid into loan offices, or treafuries, be not within the provifion of the fourth article, then a numerous clafs of
 
 Britijh
 
 merchants are paffed over in filence, aud not fo much attended to as the loyalifts, or Americans, who attached themfelves to the caufe of
 
 Britain
 
 during the war. Is it a fup-pofable cafe, that the
 
 BritiJh
 
 negociators would have been more regardful of the interefts of the loyalifts than of their own merchants ? That they would make a diferimination between merchants, when in a national and political view, and in the eye of juftice, they were equally merritorious, and entitled to receive complete fatisfaftion for their debts? No line ftiould be drawn between creditors unlefs it' be found in the treaty. The. treaty does not make it: the truth is, that none was intended ; for, if intended, it would have been expreffed. The indefinite and fweeping terms made ufe of by the parties, fuch as “creditors on either fide, no lawful impediment to the recovery of the full value in fterling money, of all debts heretofore . contracted, ” exclude the idea of any clafs of cafes having been intended tobe excepted, and explode the doftxine of conftruc-tive diferimination. The fourth article appears to me to come, within the firft general maxim of interpretation laid down by
 
 Vattel.
 
 It is not permitted to interpret what has no need of “ interpretation. When an ait .is conceived in clear and pre-
 
 K
 
 cife terms, when the fenfe is manifeft, and leads to nothing “ abfurd, there can be no reafon to refufe the fenfe which this “ treaty naturally prefents. To goelfewhere in fearch of con- “ jeiftures, ⅛ order to reftrain or extinguifh it, is to endeavour “ to elude it. If this.dangerous method be Once admitted, “ there will be no a<ft which it will not render ufelefs. Let •C£ the brjghteft light fhine on. all the parts of the piece, let it “ be expreffed in terms the mod clear and determinate; all this “ fhall be of no ufe, if it be allowed to fearch for foreign rea- “ for.s, in order to maintain what cannot be found in the fenfe it “ naturally prefents.”
 
 Vatt*B.
 
 2.
 
 ch.
 
 17.
 
 f. 263.
 
 ..
 

 To proceed, the conftrutftion on the part of the defendants excludes mutuality. The debts due from
 
 Britijh
 
 fubjetfts to
 
 American
 
 citizens were not confifcated, or fequeftered, or .drawn into the' public coffers. They.were left untouched. Now, if all the
 
 Britijh
 
 debtors be compelled to
 
 pay their’American
 
 creditors, and a part only of. the
 
 American
 
 debtors be compelled to pay their
 
 Britijh
 
 creditors, there will not be that mutuality in the thing, which its nature and juftice require. The rule in fuch cafe ihould work both ways: W hereas ¡the other conftrutftion. creates mutuality, and proceeds upon
 
 *254
 
 indifcriminatirtg principles. The former conftruftion does violence to the letter and fpirit of the inftrument; the latter flows eafily and naturally out of it.
 

 It hás been made a queftion,'whether the confifcation of debts, which were contracted by individuals of different nations in time of peace, and remain due to individuals of the enemy in time of war, is au.thorifed by the law of nations among civilized ftates ? 1 {hall not, however, controvert the pofition, ■ that, by the rigour of the law of nations, debts of the defcrip-tionjuft mentioned,-may be confifcated. This rule has by fome been confidered as a relift of barbarifm; it is certainly a hard one, and cannot continue long among commercial nations; indeed, it ought not to have exifted among any nations, and, perhaps, is generally exploded at the'préfent day in Europe. ■ Hear the language of
 
 Vattell
 
 on .this fubjeft,
 
 B.
 
 3. cc
 
 c.
 
 5
 
 .f.
 
 77. “But atprefent, in regard to the advantage “ and fafety of commerce, all the fovereigns of
 
 Europe
 
 have “ departed from this rigor. And as this cuftom has been ge- “ nerally received, he who ihould aft'contrary to it, would injure the public faith; for Arrangers trufted his fubjefts only “ from a firm perfuafion, that the, general cuftom would be “ obferved., .The Arate does not fo much as touch the fums which it owes to the enemy. Every where, in cafe of war, “ funds credited to the public are exempt from confifcation, “ and.feizure.” The Légiflátors .of
 
 Virginia,'
 
 who made the aft, which has been pleaded in bar, lay down the doftrine relative to this point, in firrong and unequivocal terms. For, they exprefsly declare, that the law and ufages of nations require, that debts ihould not be confifcated. If the enemy ihould, in thefirft inftance, direft a confifcation of debts, retaliation might in fuch cafe be a proper and juftifiable mea-fufe. The truth is, that the confifcation of.debts is at once tin juft and .impolitic; it dcftroys confidence, violates good faith,, and injures the interefirs of commerce; it is alfo unpro-duólive, and in moil cafes imprafticable. ingenious writers have endeavoured to defend the doftrine on the 'gróiind, that the confifcation of debts weakens the enemy and ennch.es qur-fel.ves.. The firft is not true, becaufe remittances are ieldom, if ever, made during a war, and the fecond generally proves', unprofitable, when attempted .to be carried, into praftice. The gain is, at fnbft, temporary, and inconfiderable ; whereas the injury is certain and incalculable, and the'ignominy great and faffing. Hiftory furniíhés a remarkable inftance in lupport and illuftration of the foregoing remarks. For, in the ⅛-ar that broke out between
 
 France
 
 and
 
 Spain
 
 in the year 1684, his Catholic Majefty. endeavoured to' feize the effects of the 'fubjects.of
 
 France
 
 in. Iris kingdom;'but the-attempt proved
 
 *255
 
 ■abortive, for not one
 
 Spanijh
 
 agent or factor violated his truft, or'betrayed his
 
 French
 
 principal or correfpondent. If the payments, which have been made into the loan’office, purfuant to the act of Virginia, íhould be fcaled according to a fubfequent act' of that ftate, they would not, it is probable, amount to a very' large fum. Other reafons in Support of the doctrine have been affigned, namely, that the confiscation of debts operates as an indemnity for paft Ioffes, and a Security aginft future injuries ; but they do not appear to me to be more folid than thofe already mentioned. Confiscation of debts is confidered a difreputable thing among civilized nations of the prefent day j and indeed nothing is more ftrongly evincive of this truth,' • than that it has gone into general deffuetude, and whenever put into practice, provifion is made by the treaty, which terminates the war, for the mutual and complere reftoration of contracts and payment of debts. I feel no hefitation in. declaring, that it has always appeared to me to be incompatible with the principles of juftice and policy;- that contrails entered into by individuals of different nations, íhould be violated by their refpedtive governments in eonfe-quence of national quarrels and hoftilities. National differences Should not affeit private bargains. The confidence, both of an individual and natipnal nature, on which the con- ' trails were founded, ought to be preferved inviolate. Is not this the language of honefty and honor ? Does not the Sentiment correfpond with the principles of juftice, and the dictates of the moral fenfe ? In íhort, is it not the refult of right reafon and natural equity ? The relation,- which the parties ftood in to each other at the time of contrailing thefe debts, ought not to pafs without notice. The debts were cóntrailed. while- the creditors and debtors were fubjedls of the fame king, and children of the fame family. They' were made under the fandtion of laws common to, and binding on, both. A re volution-war could not, like other wars, be forefeen or calculated upon. The thing was improbable. No. one, at the time that the debts were contracted, had any idea of a fevc-rance or difmemberment of the empire, by which perfons, who"' had been united under one fyftem of civil polity, íhould 'be torn afunder, and become enemies for a time, and, perhaps, . aliens forever. Contrails erit.ered into in fuch a ftate of things ought tó be facredly regarded. Inviolability feems to b,e attached to them. Considering then the ufages of civilized nations, and the opinion of modern writers, relative to ^confiscation, and alfo the circumftances under which thefe debts were contracted, wc ought to take the expreffions in this fourth article in their molt extenfive fenfe. We ought to admit of no comment, that will narrow and reftriit their operation and
 
 *256
 
 import. 1The conftru~ion of a treaty made in favor of fucif creditors, and for the refforation and enforcement of pre-exiff-ing coritra~ts, ought to be liberal and benign. J~'or theic re~-fons this claufe in the treaty deferves the utmoft latitude of expoiltion. t ne totirtil article embraces au creditorS, extends to all pre~exifting debts, remav~s aI1 lawful impediments, repeal's the legiflative a~ of Virginia, which has been pleaded in bar, and with regard to the creditor anntils every thing done undcr it. This article reinflates the parties; the creditor and debtor before the war,. are creditor and debtor fince ;as they fiood then, they ftand now. To prevent miflakes, it is to be' und~rftood, that my ai~ument embraces none but lawful im-pedim~nts within th~ .m~ning of the treaty, fuch as légifla~iv~ aE~s, and payments under them into loan offices and treafuriesi An impediment created by law fiands on difFerent' groUndS froni an impediment created by the creditor, To conclude: I am o~ opinion, that the demurrer ought to have been fuftaintd; and, of ~ourfe, that the jud~r~ent rendered in the court be1ow~ is erroneous; and muft bereverfed.
 

 I
 

 R~DELL,'7ujh~?~.
 
 *
 

 In delivering my opinion on this impàr-tant cafe,1 I feel myfeif deeply ~ffe&ed by `the awful fittiatiori in which I ffarid. The uncommon magnitude of the fuhje&~
 

 its novelty, the high expe&a.tior~ it has excited, and ~e con-l~qu'ences with which a decifion maybe attended, have all im-preffed me with their fullef'c force. I have trembled left by an.
 

 • ill informed or precipitate opinidn of mine, either the hoñour~ the interefi-,' or the fafety of the United States Ihould fuffer or • •
 

 
 *257
 
 be endangered on the one hand, or the juft rights and proper . Security of any individual on the other. In endeavouring to form the opinion 1 (Hall now deliver, I am fure the great object of. my heart has been'to. difcover the trute principles upon which a decifion ought to be given, unbiafled. by any other con-fideration than the molt facred regard to juftice. Happy íhould I have thought myfelf, if I could as confidently have relied on a ftrength of abilities equal to the greatnefs of. the ©ccafion.
 

 The caufe has been fpoken to, at the bar, with a degree of ability equal to any occafion. However painfully I may at any time refiedl oh the inadequacy of my own talents, I ihall as long as I live remember with pleafure and refpe<ft,.the arguments which I have heard on this cafe: they, have difcovered an ingenuity, a depth of inveftigation, ánd a power of rea'fin-ing fully equal to any thing I have ever withefled, and fome of them have been adorned with a fplendor of eloquence fur-paffing what I have ever felt before. Fatigue has given way under its. influence, and,the heart has been warmed; while the underftanding has been inftrinSed:
 

 The a ¿lion now before the court is an aSion. of debt; brought by a
 
 Britijh
 
 creditor .againft an
 
 Jmerican
 
 debtor, to recover upon a bond executed before the late war.
 

 To this a£tion there are five pleas* fubftantially as follow:
 

 The ift, a plea of payment, oh. which ¡flue is joined, but hot now before the court, and which is to be tried by a jury, iri ' cafe judgment' be given for the Plaintiff upon.the legal quef-tions arifing on the other pleas, fo as to entitle him to try the the ¡flue-.
 

 The 2d is a plea of a payment into the treafury of the State; of part of the debt, under-an ⅛⅞ of affembly of the-aoth of . OSlober, 1777- ■
 

 The 3d. plea is grounded oh two adds of affembly ': One of
 
 May
 
 Í779, under which it is alledged that the debt in qúeftion became forfeited to the State; the other of
 
 May
 
 1782, which is relied óri as a bar to the recovery. The former part of the. plea I underftand to be given up by the defendant’s counfci, and certainly with great propriety, becáufe debtsare exprefsly excepted in the adHt refers to.
 

 The 4th plea, alledges a non'-compliance with the jtreaty 6n . the part of
 
 Great
 
 Britain, and, therefore, that the
 
 Britijh
 
 ere 3itor cannot
 
 nove
 
 recover a benefit under the fame treaty. It alfo alledges afits of hoftility by
 
 Great Britain
 
 fince the peace, as likewife forming a bar ..toddle recovery'of the Plaintiff, who is a
 
 Britijh
 
 creditor. ■
 

 The 5th plea is, that this, debt was abfolutely annulled by the' change of ' This alfo I underftand to havé
 
 *258
 
 been given up in the courfe of the argument, and. undoubtedly it is not tenable. ■ ' .
 

 The only pleas, therefore, for us- to confider, are the feconcf, part Of the third, and the fourth. Every thing I hav/e to fay on that part of the 3d, not relinquiihed, admitting the fulleft operation of the a£t of 178a, as intending to affeift
 
 Britijh
 
 creditors themfelves, as well as aift^nees,'which does not appear to me to have formed any part of its obj eel, will appeal- from my obfer-vations on the feco'nd plea; .and; therefore, to prevent unnecefta
 
 ty
 
 repetition, I (hall not confider it feparately by itielf.
 

 It leems proper to fpeak of the fourth piba firft, becaufe, if that can be maintained, it is altogether immaterial to confider cither of the others.
 

 I am clearly of opinion, that the fourth plea is not maintainable.
 

 ' it is grounded on two'allegations.
 

 ift. The breach of the treaty by
 
 Great
 
 Britain, as alledged in. the plea.
 

 . 2d. New a£ts of hoftility on the part of that kingdom. •
 

 1. In regard to the firft, I confider the law of nations to be decided as to the following pofition, viz:'
 

 That.if a tre ity be broken by one of the contra&'ng par- •“ ties it becomes (in the exprefiive language of the law) not “
 
 ahfolutely void,
 
 but voidable5 and voidable, not at the option “ of any individual of the con trailing country injured, however “ much he may be affe&d by it, hut
 
 at the option of the fo-u vereign power of that
 
 country,
 
 of which fuch individual is a a
 
 memberThe authorities, I tnink, are full and decifive to that effect.
 
 Grotius, b,
 
 2.
 
 c.
 
 15.
 
 f
 
 15.
 
 ib. b.
 
 3.
 
 c.
 
 20. / 35> 36> 37> 38-
 
 Burl■ P-
 
 35^
 
 port
 
 4-
 
 c.
 
 14.
 
 in f.
 
 8. Fattel,
 
 b.
 
 4,
 
 c.
 
 4.
 
 f
 
 54.
 

 The gentlemen for the defendant, taking hold of fome particular exprelilions, without regarding the whole of thefe authorities, and confidering the reafon of them, have argued, that true, in the, prefent inftance (Tor example). Congrefs might have remitted the infradtion, but not having done fo, the Plaintiff is barred for the prefent, however he might be teftored to the right, in cafe the infraction fhould. hereafter be actually .remitted.
 

 But to me it is very evident, that fuch a pofition is not maintainable, either by the authorities I have recited, or the reafon of the thing.
 

 The words of
 
 Grótius
 
 are pointed and exprefs to fhew, not-that the treaty ihall.be reputed broken
 
 until a rcmijfion is a£iually pronounced by the injured
 
 party, but that itihall not be reputed as broken, until the injured party ihall think proper
 
 ao
 
 tually 'to proribunce it broken; and it is remarkable that his
 
 *259
 
 words to this effeffc, are calculated for the very purpofe of removing any dotibts which other more general expreffions might occafion. His words are: . .
 

 “ When there is treachery on one fide, it. is certainly at the K choice of the innocent party to let thé peace fubfift; as
 
 Scipio
 
 “ did formerly after many perfidious actions of . the
 
 Carthage-
 
 “
 
 nians.
 
 Becaufe ,no man, by doing contrary to his ebliga- “ tion, can thereby difcharge himfilf from ic. For though “ it is exprefied, that by fucb a fait the peace ihall be reputed “ as broken,
 
 yet this claufe is to he underjiood only in favour of Ci the
 
 innocent,
 
 if he thinks fit' to make ufe of it.”' Grotius.- . b.
 
 3. r. ao.
 
 f
 
 38.
 

 The whole claufe of
 
 Fattel
 
 is fubftantially to the-fame pur-pofe; and, therefore, where in one part of the claufe he fays, “
 
 the offended party may remit the infradiion
 
 committed,” this muft be understood, to make the whole confiftent, a remiffion not arifing from an exprefs declaration, but from a tacit ac-quiefcence in the breach. Ocherwife, what becomes of the words ?—“ but if he chufes not to come to a rupture, the “ treaty remains valid and obligatory;” The treaty, there-* fore, muft remain valid and obligatory, until the power, author ¡fed to come- to a rupture, does come to it.
 

 The fame obfervations apply to Burlamaqui, who exprefles himfelf more generally, but ftates fubftantially the fame doctrine. His expreilion is, “it is at the choice of the innocent “ party to let the peace fubfift,” which certainly does not require a pofitive declaration that it ill all fubfift.
 

 This doefrine appears to me to be grounded on the higheft reafon. It is undoubtedly tjue, that each nation is confidered as a moral perfon, and the w el fire and íñiereft of all the-individuals- of tht nation, fo far as they’may be aftedled by its concerns With foreign nations, are in each country entrufted to fome particular . power authorifed to negocíate with them,’ or to fpeak the fenfe of the nation on any emergency.
 

 When any individual, -therefore, of any nation, has caufe of complaint againft another' nation, or any individual of it, not immediately amenable to the authority of his own, he may complain to that power in his own nation, which is entrufted with the fovereignty of it as to foreign negociations, and he will be enitled to all the redrefs which the nature of. his cafe requires, and the fiutation of his own country will enable him to obtain,
 

 The people of the
 
 United
 
 States, in their prefent Conftitution, have devolved on the Prefident and Senate, the power of' making treaties; and upon Congrefs, the power of declaring war.
 

 ,To
 
 one or other of thefe powers, in cafe of an infracliorf of a treaty that has been entered into with the UnitedrStates, I apprehend application is to be made,
 

 
 *260
 

 Upon fuch
 
 an application various'important confiderations would neceifarily occur.
 

 1. Whether the treaty was firft violated on the part of the
 
 United States,
 
 or on that of the other contracting power ?
 

 2. Whether, if firft violated by the latter, it was a violation in an important or an inco'nfiderable article; whether the violation was by defign or accident, or owing to unforefeen obfta-cles; whether, in ihort, it was wholly or partially without ex-cufe ?
 

 3. Whether, admitting it' was either, it was a matter for which compenfation could be made, or otherwife ?
 

 Whether the injury was of fuch a nature as to admit of negociation, or to require immediate fatisfaftion, peremptorily and without delay?
 

 5. Whether, if the circumftances in all other cafes juftified it, it was advifeable, upon an extenfive view and wife eftimation o.f all the relative circumftances of the
 
 United
 
 States, t9 declare the treaty
 
 broken,
 
 and of courfe
 
 void-,
 
 for though the parly firft|breaking the treaty cannot make it
 
 abfolutely void,
 
 but it is only voidable at the election of the injured party, yet when that eledtion is made, by declaring the treaty Void, I conceive it is totally fo as to both parties, and that all rights enjoyed under the treaty are abfolutely annulled, as if no ftipulation had been rnade for them ?
 

 Thefe are confiderations of policy, confiderations of extreme magnitude, and certainly entirely incompetent to the examination and decifion of a Court of Juftice.
 

 Miferable and difgraceful indeed, would be the fituation of the citizens of the
 
 United
 
 States,
 
 if they were
 
 obliged to-comply with a treaty on their part, and had no means of redrefs for a non-compliance by the other contra&ing power.
 

 But tfiey have, and the law of nations points out the remedy. The remedy depends on the diferetion and fenfe of duty of theft own government.
 

 This plea is therefore defective, fo far as concerns the breach of the treaty, rrot becauié this, court hath no cognizance of a breadh of treaty, but becaufe by'the law of nations, we have no authority upon any information or conceffions of any individuals, to confider or declare it broken; but our judgment rnuj be grounded on the folemn declaration of Gongrefs alone, (to whom, I conceive, the authority is entrufted) given for the verv purpofe of vacating the treaty on the principles I have ftated. The paper tranfmitted' by order of Congrefs, to the Executive of Virginia,-'on the fubjedl of a violation complained ,of on the part of the
 
 Britijh,
 
 certainly cannot amount to fo much, efpecially as there is another paper of theirs in the year ¾787, tranfmitted to the different States, complaining of viola
 
 *261
 
 tions on our part. They have pronounced no folemn decifion, which committed the firft infraftion; much lefs have they declared that in cónfequence of the infrañion1 on the part of the
 
 Britijhy
 
 they chofe that the treaty ihould be annulled
 

 But it is faid .that a declaration by Congrefs, that the treaty was broken by
 
 Great Britain,
 
 would be exercifing a judicial power, which by the Cqnftitution in all cafes of treaties is devolved on the Judges. "
 

 Surely fuch a thing was never in the contemplation of the Conftitution. If it was, a method is ftiil wanting by which it could be executed for, if we are to declare, whether
 
 Great Britain
 
 or the
 
 United
 
 States, have violated a treaty,,we ought to have fome way of bringing both the parties.before us.
 

 The method contended for by the-defendaíH’s counfel is very ill fuited to another par.t of their dotftrine, which is certainly right, that a nation is a moral perfon, and that the a£t of afove-reign- power to whom its foreign concerns are entrufted, is the ait of every individual of that nation, becaufe he reprefents the whole.
 

 But in this cafe, the King of
 
 Gr-eat Britain
 
 does not ait on behalf of the plaintiff, his fubjeit, and the
 
 United
 
 Staferon'be-half of the defendants, their citizens; but the plaintiff is alledged to reprefent the.fovereignty of the
 
 United
 
 States, a dignity for-aught I know, of which they may be refpeitively worthy,'but which certainly does not either politically or judicially belong to them.
 

 The Judiciary is undoubtedly to determine in all cafes in law and equity, coming before them concerning treaties.
 

 The fubjedi of treaties, Gentlemen truly fay, is to be determined by the law of nations. •
 

 It is a part of the law of-nations, that if a treaty he violated by one party, it is at the.option
 
 of the
 
 other party, if innocent, to declare, in cónfequence of the breach, that the treaty is void.
 

 If. Congrefs, therefore,, (who, I conceive, alone have fuch authority ^finder pur Government) ihall make fuch • a declaration, in any cafe like the.prefent, I ihall deem-it my. duty to regard the treaty as void, and then to forbear any ihare in-executing it as-a Judge.
 

 But the fame law of nations tells me, that until that declaration be made,, I muft regard it (in the language of the
 
 lawj valid and obligatory.
 

 The admiffion of the fadl, flared in the plea, cannot be, taken as an admiffion
 
 that the fa£i is JlriBly
 
 true, becaufe the plaintiff had no-way of avoiding the plea but by a demurrer, -whether it was true or not.
 
 If it
 
 was well pleaded, it is an admiffion of the entire truth, but not otherwife. For the reafons I have given, it is clear to me that it is not well pleaded.
 

 
 *262
 
 2. In regard to the fecond branch of this plea, new ails op hoftility, if meant as conftitoting a breach, (which I don’t un-derftand it to
 
 be)
 
 the obfer'vationS I have already made will equally applv to this part of the plea. If meant as a proof, that a war in fail:, tho’ nothin name fubfifts, and therefore that the plaintiff is an alien enemy, the fame obfervations will apply ftill more forcibly We muft receive a declaration, that we are in a ftate of war, from ¿hat part of the fovereignty of the union to which that important fubjeft is entrufted. We certainly want feme better information of.tbe faft than we have at prefent.— However, this point feems fo clear, that the defendant’s counfel very faintly attempted to maintain this idea of the cafe.
 

 I conclude, therefore, for thefe reafons, that there is nothing in the 4th plea which is a bar to the plaintiff’s aflion.
 

 The great difficulty of the cafe arifes from the fecond plea.— This is the only part of the cafe, about which I have, from the beginning, entertained any doubt. And I muft confefs, I have had very great doubts, indeed, on this fubjefl. My opinion has varied more than once in regard to if. I have endeavoured to come to a cortclufion byanalyfing it in all its parts; and the jefult of my inveftigation has been, according to the beft judgment I am capable of forming, upon the moil deliberate examination, that the plea is fupportable. My reafons for this opinion, Í muft give at confiderable length, in order to ihew it is not a rafh one, and that Gentlemen may be enabled in the future progrefs of this cafe, more eafily to deleft my errors, i.f I ihould have committed any.
 

 I will divide the corfideration of the. plea into two points :
 

 1. Whether the plea would have been a bar if this cafe had . ftood independently of the treaty ?
 

 2. Whether the treaty deftroys the operation of the plea?
 

 • In confidering the firft point, ‡ fhall, for the greater perfpi-c:uity, coniider it under the following heads :
 

 1. Whether the Legiflarure of this State had a right, agrea-ble to the law of nations, to confifcate the debt in queftion ?
 

 2. Whether, admitting that the Legiflature had not a right, agreabiy to the law of nations, to confifcate the debt, 'yet if they in fail did fo, it would not, while it remained unrepealed by any fubfequent, Sufficient authority, have been valid and obligatory within the limits of the State, fo as to bar any fuit for the recovery .qf the debt ?•
 

 3. Whether, if it fhall be confidered. that the Legiflature dj-cf not wholly confifcate the debt, foas totally to extinguifh all right in the creditor, (as I apprehend they clearly did not) but only fequefter it under the peculiar eircumftances ftated in the a<ft, the payment.ih queftion, under the authority of the aft, did not, at that time at leaft, wholly exonerate the debtor ?
 

 
 *263
 
 i. It being clear that there was no abfolu'te confifcation in this cafe, I lhall not give a conclufive opinion upon the right; but as I think it .highly probable fuch a right did exiffc, fome obfervations on that fubjed will naturally-and properly lead'to t'hofe upon which my opinion, as to the validity of 'the pay-rrients, is ultimately founded. For this reafon, and this reafon only, I difdufs the prefent quellion.
 

 / Whatever doubt might have been entertained, by reafoning ■on the particular examples of
 
 Grotius
 
 and
 
 Fuffendorf Bynker-,
 
 flioek, (who, T believe, is alone, a very great authority) is full and decifive in the very point as toa general right of confifcat-ing debts of an enemy. His doétrine I take to be this, that the law of nations authorifes it, unlefs in former treaties between the belligerent powers', there be particular ftipulátions to the contrary.
 
 Vat te l
 
 recognifes the general right,-but ftates a prevailing cuftom in
 
 Europe
 
 to the contrary ;■ in confequence of which he fays, “ As this cuftom hás been generally obferved, “ he who would a<ft contrary to it would injure the public faith; “ for ftrangers trufted his fubjeits only from a firm perluafion “ that the general cuftom would be obferved.”
 
 Vattel
 
 mentions the fa£t( but does not'ftate the origin of the faól; which, I think, it is not improbable, may have arifen in confequence of particular ftipulátions, as mentioned by
 
 Bynker jhoek
 
 5 very few of the civilized .nations of Europe, not having treaties with each other. '
 

 Whether this cuftomary law (admitting the principle topre- ' vail by cuftom'pnly) was binding on the
 
 American
 
 States, during the late war, in refpect to
 
 Great Britain
 
 at leaft, maybe ■ a queftion of confiderable doubt. There were particular cir-eumftances in the relative fituation of the two countries, which . might porfibly exempt this from the-force of fuch a cuftom, could itbe fuppofed that when this country became an independent nation, this cuftomary law immediately attached upon it. However this c'ouhtry might have been confidered bound to obferve fuch a law in regard to any nation recognizing its independence, had we been unfortunately at war with fuch, and ■ who obferved it on her part, (for, undoubtedly, a breach on one fide would juftify a non-obfervance by the other) it did not. he-ceflarily follow, that the people of this country were bound to obferve. it to a nation, which not only did not recognize, but lought to deftroy their very exiftence as art independent people, confidering them in no other light than as traitors, whofe lives and fortunes were forfeited'!» the law. The people of this country literally fought
 
 pro aris
 
 ⅛’
 
 foe
 
 is; and, therefore, means of defence, which, when inferior objedls were in view, might not be ftridlly juftifiable, might in fuch an extremity bej-*ome fo, on the great principle, on which the laws of war are
 
 *264
 
 founded,
 
 -felf prefervation
 
 ; an objeCt that may be attained b.y any mean's, not inconfiftent with the eternal and immutable rules of moral obligation.
 

 The principles of the common law of England, as appears from a cafe"! Shewed to the bar, (that in
 
 Sir Thomas Parker’s Reports, p.
 
 267.
 
 the Attorney General
 
 againft
 
 Weeden
 
 and.
 
 Shales)
 
 do undoubtedly recognise the forfeiture of a
 
 chofe in aStion
 
 due to an enemy. At the utmoft it only requires, that an inquifition fhould be completed during the war, fo as,, by ascertaining the fa&, fully to eftabliih the title cif the .crown. I can fee no reafon why .that principle of the common law fhould not obtain here. If fo, then independent of any aCt of legiilation whatever,-'an inquifition completed during the war, finding the faCt,.would have veiled the title to the debt in queftion ab-folutely in the State, unlefs this debt can be diftinguifhed from any other
 
 chofe in aStion.
 
 Such a diftinCtion has been attempted : ift, Becaufe this debt was due . before thd war. 2d, Be-caufe the State had not poileffion of the bond. To thefe objections, I think, eafy anfwers may be given, ift, The right acquired by war, (detached.from cuftom, which I am not now-confidering, or any exprefs ftipulation, if there be fuch)
 
 depends on t'he power of feist,ing the enemy’s ejfeSis.
 
 • It js not grounded on any antecedent claim of property, but on the contrary, the property is admitted to be the enemy’s, in the very aCt of Seizing it. Its foie juftification is, that being forced into aftateof hoftilityi,by an,injury for which no Satisfaction could be obtained in a’peaceable manner, reprifals may be made ufe of, as a means to compel juftice to be done, or to enable the injured party to obtain fatisfaCtion for itfclf. Such a power, from its nature (being grounded on neceffity only) feems incapable of limitation by any general rule, 'and if confci.entioufly ufed (of which each nation muft judge fob itfclf) the principle applies as well to property, which' was in the country before the war began, as to any other which may by accident come into- its pof-feffion. The fame objection would apply to the Seizure of any other property of an enemy, which had been in the country before the war began, as of an incorporeal right. The firft refo-lution in the cafe I cited is, as to
 
 chafes in aStion
 
 generally, tho’ ,
 
 tha chofe, in aStion
 
 therein queftion, was, in fa£t,'one which had accrued during the war.. 2d, The objection from the State nothavíng poiiefTion of the bond, (though countenanced by one or two writers) I think, isalfo, fufceptible of a Satisfactory' an-fwer. The bond doés not
 
 create
 
 the debt, but-is only evidence of it. Poffeflion of it alone can give no right. A robber, or in? individual coming.to the poiTefliorrof it by accident, acquires bo more title to the money than he had before. The law is fo even as to prornilfory notes payable to bearer, if the faCtcan be.
 
 *265
 
 made to appear. If a bond-be loft, equity has long fince afforded a remedy. In a modern cafe in a court of law, a proferí of a deed has been difpenfed vritb, upon a fpccial declaration ftating the lofs of it
 
 *
 
 . It was while the
 
 pojjejjien
 
 and the
 
 right
 
 were confounded, that this objedlion was thought of weight. It is obfervable alfo, that it would .create an idle and a trifling diftindtion between debts due by fpecialty, and limpie contradi debts, a diftindlion.that might be fupported by ingenuity, but certainly not by reafon. And it would found harfh, to fay that fimple contradi debts ihould be forfeitable, if the witneffes were in the country, but otherwife not. Now, if the forfeiture of the debt in queftion, could have been effedled at common law, by an inquifition completed during the'war, I can fee no rea-fon why the Legiflature could not, with equal propriety as to the right, have effedled the fame objedt fubftantially in any other mode. The proceeding, in each cafe, muft be
 
 ex
 
 parte, and the objedt affedted can be-concluftvely bound by neither, if his cafe did not come within the principles of the law. This I argue, upon a fuppofttion that the cuftomary law of nations, was not binding here, at leaft in this inftance. That, however, is a point of fame delicacy, and not neceffary for me now to determine, becaufe, gd, I am of opinion, that admitting that the-Legiflature had not ftriclly a right, agreeably to the law of nations, to conftfcate the debt in queftion ; yet, if they in fadt did fo, it would; while it remained unimpeached by any fubfequent fuiflcient authority, have been valid and obligatory within the limits of the Stale, fo as to bar any fuit for die recovery of the debt.
 

 In this opinion I have the misfortune to differ from a very high authority
 
 †
 
 , for which I have the greateft refpedt. But however painful it may be, to differ from gentlemen, whofe fu-perior abilities and learning I readily acknowledge, I am under the indifpénfabie necelaty of judging according to the beft lights of my own unu’erftanding, aflifted by all the information I can. acquire. I confefs, therefore, that I agree entirely with the Defendant’s Gounfel in thinking, that the adts oftheLegiflatureofthe State, in regard to the fubjedl in queftion, fo far as they were . conformable to the Conftitution'of the State, and not in violation of any article of the confederation (where that was concerned) were abfolutely binding
 
 de faEto,
 
 and that if, in refpedt to foreign nations, or any individual belonging to them, they were notftridlly warranted by the law of nations, which ought
 
 *266
 
 to have been their guide, the ails were not for that re'afon void, . but the State was anfwerr.ble to the
 
 United Stales,
 
 for a violation of the law of nations, which the nation, injured might complain of to the fovefeignty of the Union. There is no doubt that an act of- Parliament in
 
 Great
 
 Britain, would bind in its own country in- every poiiibie cafe in which the Legif-lature thought proper to ait.
 
 Blazhjianc
 

 *
 

 is precife as to that point, even, in cafes mauifeflly unjufr, -if the words of the law are plain and unequivocal. In this, contry, thank
 
 God,-
 
 a lefs arbitrary principle prevaiiá. -The power of the Legiilatures is limited; of the State Legifiatures by their own State Con-futations, and that of. the
 
 United States-,
 
 of the Legislature-of the Union by. the Conftitution of the Union. Beyond thefe limitations, I have no doubt, their afts are void, becaufe they are not warranted by the authority given. But within them, i think, they are in ali cafes- obligatory in the country fubjecl to their own immediate jurifdiction, becaufe in fuch cafas the Legiilatures only exercife a diferetion exprefsly confided to them by the conftitution of their country, and for the abufe of which, (if it íhould be afcufec) they alone are accountable. It is a dilcretion no more qoncrot'lable (as I conceive) by a Court of juflice, than a judicial determination is by them, neither department having any fight to encroach oii the exclusive province of the other, in order to rectify any error in principle, which it may fuppofe the other has committed. It is fufiicient for each to take care that it commits no error .of its own. As to a diilinction between a State Court and this Court, in this refpcct, I do, for my part, difclaim, according to my prefent fentiments, any authority to give a diiTerenr decifion in any c'afe whatfoever from fuch as a State Court would be competent to give under the fame circumílances. I have no conception that this court is in the nature of a foreign jurifdiction. The thing itfelf would be as improperas it would be odious, in cafes where acts of the State have a concurrent jurifdiction y/ith it.
 

 With regard to. the exception I fpeak of, no one has fuggeft-ed, that the aft of
 
 OSfoher,
 
 1777, was in any manner incon-fiftent with the Conftitution of the flats; and” at that time the articles of Confederation were not in force; but if they had been, I think there is no colour for «Hedging any inconfiflency with them, fir.ee Congrefs could have patted no aft on this fubjeft, but if they had wifhed for an aft, limit have recommend..d to the State Legiilatures to pafs'it. And the very nature of a recommendation implies, that the party recommending
 
 cannot,
 
 but the party.to whom the recommendation is made,
 
 can
 
 do the thing recommended.
 

 
 *267
 
 The 3d queftion under the preient bead, that.I propofed, •£ was this: “ Whether, if it íhall be confidered that the Legif- ££ lature did not abfolutely csnfifcate the debt, fo as totally to ££ exlinguiih all right in the creditor, (as Í apprehend they ckar- “ ly did not) but only fequeftered it under the pec iiliarcircum- ££ fiances ftated in the aft; the payment in queftion, under the “ authority of the aft, did nor, at that time at leaft, wholly ex- “ onerate the debtor.”
 

 The words of the enafting claufe concerning this fubjeft, are as follow : “ That it ihalT and may be'lawful for any citi- “ tizen of this commonwealth, owing money to a fubjeft: of “
 
 Great
 
 Britain, to pay (he fame, or any part thereof) from “ time to time, as he iliall think fit, into the faid loan office, “ taking thereout a certificate for the faid fum, in the name of the “ .creditor, with an indorfement under the hand of the cofnmif-t£ fioner of the faid office, expreffing the name of the payer,' “ and íhall deliver fuch certificate to the Governor and Ccun- ££ cil,
 
 whofe receipt fall difeharge him from fo much of the debt.
 
 ££ And the Governor and Council Iliall in like manner lay bc- “ fore the General Aftembly once in every year, an account of “ thefe certificates, fpecifying the names of the perfons, by ££ and for whom they were paid, and fhali fee to the fafe-£t keeping of the fame, fubjeft to the future direftion of the ££ Legiflature.”
 

 We are too apt, in eftimaling a law pafied at a remote period, to combine in oUr confideration, all the fubfequent events which have had an influence upon it, inftead of confining our-felves (which we ought to do) to the exifting- circumftances at . the time of its paffing. Let us, however, recolleft, that at this period no
 
 Britijh
 
 creditor cSuld inftitute a fuit for the recovery of his debt, as the war ccnfiituted him an alien enemy, and therefore his remedy ftood fufpended at common law, fo that he ran the rifque of the entire lefts of every debt, ■ where his debtor proved infolvent during the war. Cenfe-qncntly, it would, in his own eftimation, have been doing him aconfiderable forvice, that the ftaíe íhould authorife a receipt on his behalf, had there been no other currency in circulation than gold or filver. it would have been placing him in a ftate of fecurity, greater than he had any reafon to expeft. The extremity of the public fituation,- rendered paper money una-avoidablc, but this was an evil to which all
 
 American
 
 as well as
 
 Briiljh
 
 creditors wereliable, ánd the former (as weall know) were compelled, upon a tender, under pain of being deemed enemies of their'country, to receive it at its nominal value. It was natural fand perhaps) not altogether, if at all, unjuft, if a man had
 
 f.
 
 ioo.due to him from
 
 B.
 
 and he himfelf owed
 
 C,
 
 /. 100, and
 
 B,
 
 paid him the
 
 f.
 
 rño, though in depreciated
 
 *268
 
 money, that he ihould' immediately carry it to his creditor. Many, I have no doubt, paid their creditors upon thefe plain grounds of retribution, though others undoubtedly (for no government can make all men, honeft) took moll fcandalous advantages of depreciation in its advanced periods. When this law was 'palled, the depreciation, I believe, was little felt, and not at all acknowledged.
 
 De minimis non curat
 
 lex, is an. old law maxim-. * I may parody it on this occafion, by. faying
 
 De minimis non curat libertas.
 
 Whenlife, liberty, property, every thing dear to man was at flake,, few could have coldnefs of heart enough to watch the then fcarcely perceptible gradation in th.e value of money. In this fituati'on the Legiflature of the ftate palled the lW in queftion. It did all that the then fituation of affairs would admit of, even for the benefit of the
 
 Britijh
 
 creditors themfelves, and it put it in the power of
 
 American
 
 creditors, who were • compelled to receive the exiiling currency, .to pay their own debts with it. The depofiting of money jn the loan office, was at that time by many, even in
 
 Arnerica
 
 itfelf, thought an eligible method, of fecuring it, and with fome foreigners, it was a favorite, object of fpeculation. I know, myfelf, that the proceeds .of fome very valuable cargoes were ordered to be fo applied, and_probably there were fu.ch inítánces of which 1 knew nothing. The increafed difficulties of the
 
 American
 
 war, in a great degree, difappointed the intentions of the original-law, but ftill,
 
 Britijh
 
 and
 
 Ameri
 
 can creditors were placed on the fame footing, fo far as it was in the power of the Legiflature to effect it.
 

 ■ I thought it proper to fay thus much, as introductory. to the obíervatións I ihall make on the legal operation of thofe payments.- '
 

 t.' If the ftate
 
 de
 
 jure, according to the law of nations (which I itrongly incline to
 
 think)
 
 had a right wholly to confifcate this debt, they had undoubtedly.¾ right to proceed a partial way towards if by receiving the money, and difeharging the debtor, fubflituting itfelf in his place. We are to be governed by things, and not names, and, confequently; if the ftate had. a right to fay to a
 
 debtor-—a
 
 We confifcate the right of “ your creditor, and you mull pay your debt to us, and not to “ him,”—they had a right -to fay—We do not chufe for the “ prefent, abfolutely fo confifcate this debt,-although we have “ the power fo to do, but if you will pay the money to us, you “ ihall be as completely difeharged as if we did.” jn this point of view, I think there can be no doubt but that a difeharge would,-under fuch circumftances, have as completely extin-guifhed the right.of the creditor
 
 as to the
 
 debtor, as if, in CiSe fio war had intervened, and therefore no right had accrued under it
 
 t&
 
 the. ílatss-, the debtor had actually paid the.money
 
 *269
 
 to the order of the creditor, and received a difcharge from himfeif.
 

 2. For the reafons I have before given,.I think a confifcation, either whole *r partial, or any lefs exercife cif that power
 
 de fa fio,
 
 though not
 
 de jure,
 
 would, in this ftatc have been perfectly binding, and in legal contemplation as effettual to bar a recovery, as if the- law of nations had been ftrictly and unqueftipnably purfued.
 

 3. I believe there, can be no doubt, but that according to the law of nations, even on the moft modern notions of it,
 
 z
 
 fequeftration merely, for the purpofe of recovering the debts, and preventing the remittance of them to the enemy, and thereby ftrengthening him, and weakening the government, would be allowable, and if fo, furely it follows, as a matter of eburfe, (perhaps it would follow without a folemn declaration) that when, in virtue of any fucb act, the money was paid to the go~ vernment, the debtor was wholly difeharged, and the government, if it thought proper, not to proceed to confifcation after-wards, became itfelf liable. ■ '
 

 The cafe cited from the
 
 Law.of ■ Evidence,
 

 *
 

 I think r -;ri authority fubftantially in point, to fhew the.complete difeb '.rge of the debtor.
 

 tc In debt upon a leafe, the Defendant pleaded payment, and “ in evidence ihewed, he paid it to fequeftrators of the coro- “ monwealth, the Plaintiff being, a delinquent; and it was “ ruled this .was good payment to prove the iffue, which was a “ payment fo the Plaintiff himfeif.” Clayton, T29.
 
 Anonymous Laiu of Evidence, (Edit ofi^f) p.
 
 196.
 
 c. f c.
 
 11.
 

 This erffe is certainly very ftronp;, for it was not ."deemed nfcceflary to plead it in bar, but it was admitted in evidence, upon a plea that he paid the .money to' the Plaintiff himfeif.; It dees not appear whether this action was tried under the commonwealth, or after the reftoration,. If under the former, it is more parallel to the prefent action. If if-was tried after-the reiteration, it is a ftill ftronger cafe, for it ihewed that 'courts of juftice.thought themfelves bound to protedt individuals, who a ¿ted under laws cfa government they deemed an ufur-pation, and on all occafions treated with contempt.
 
 †
 
 Befides án objeition, which I iliall notice preferitly, I can imagine but one real difference'between that cafe and the. one before us; and that is, that in
 
 England
 
 the payment Was compelled, here '
 
 *270
 
 it was voluntary. I once thought that circutnftance of weight, but on reflection, 1 confider the public faith equally pledged in one cafe as in the other; that the authority exercifed in both is the fame, and that it not only would be unjuft in itfelf, but of dangerous example, to tell men that they fhould be protected under a compulfory obedience to government, but not upon a chearful fubmiftion to it.
 

 ■ 4. My observations as to the paper money, which the neceflities of this country unfortunately conftrained u's to ufefo long, had no other tendency than to ihew the circumftances of the fact as they really exifted. As' a judge, I conceive rnyfelf bound to fay, that that makes.nó d:fterence as to the right. The com-petenc'y of fuch ails at tnat time was unqueftionable.' Their juftice depended on the degree of neceffity which gave rife to them. A payment in pager money, then a legal tender, I muft confider as complete and effectual a payment,
 
 at that
 
 time, as payment in gold or filvfcr. Such was the law of the country ! A law which fe-verc neccflity dictated ! and by which, in the courfe of the war, in which many facrifices became unavoidable, many thoufand
 
 American
 
 citizens, as well as many
 
 Briiijh
 
 merchants, fuffered. It is the lot of our nature to experience many evils for which we can find no remedy, and therefore- nothing can be more fallacious than in any thing of a general nature, to expeít perfcdt exaétnefs.
 

 For thefe reafons, I am clearly of opinion, that under the aét of fequeftration, and the payment and difeharge, the dif-charge will be a complete bar in the prefent cafe, unlefs there be fomething in the Treaty of Peace to revive the right of the creditor againft the defendant, fo' as to difable the latter from availing himfelf of the payment into the treafury, in bar to the prefent action»
 

 The operation of that Treaty comes, therefore, now to be confidered. None can reverence the obligation of treaties more than I do. The peace of mankind, the honour of the human race, the welfare, perhaps the being of future generations, muft in no inconsiderable d§gree depend on the facred obfervance of national convar,tions._ if ever any people on account of the importante of a treaty, were under additional obligations to obferve it, the people of the
 
 United States
 
 furely are to ob-ft-rve the Treaty in queftion. It gave peace to our country, after a war attended with many calamities, and, in fome of its periods, prefeuting a moil melancholy profpcil. It infured, fo far as peace could infure them, the freeft forms of government, and the greateft fhare of individual liberty, of which, perhaps, the world had feen any example. It prefente'd boundlefs views of future happinefs and greatnefs, which'ajmoft overpower the imagination, and which, I truft, will not be altogether
 
 *271
 
 ««realized: The means are in our power; wifdom and virtue arc alone required to avail ourfelves of them. Such was the peace which was procured by the Treaty now in queftion—a treaty which, when it ihali be fully executed in ail its parts, on both Tides, future generations will look up .to with gratitude and admiration, and with no fmall degree-of fervour "towards thofc who had an active fit arc in procuring it.
 

 In proceeding:» examine the treaty with thefe fentimenis, it may well be imagined I do it with a reverential and facred awe, left by any miiconftruction of mine, I ihould weaken ..ny one of its proviiions.
 

 The queftion now is, whether, under this treaty, the payment into'the Treafury is aliar to fo much of the Plaintiff’s claim, as comprehends money to that amount ?
 

 I ihali examine this queftion under two divifions :
 

 ift. Whether it would have been a bar, as the law exifted, after, the ratification'of the treaty, and previous, to the paffing of the prefent Conftitution of the
 
 United
 
 States, even if the words of the treaty mi:ft be conftrued to comprehend fuch a cafe.
 

 ad. Whether, under that -Conftitution, it can now be conii-dered as a bar.
 

 My opinion, Iconfefs, as to the firft queftion, is, that if the treaty had plainly comprehended inch cafes, the Plaintiff could riot have recovered in a Court of Juft ice in this State, as the law flood, previous to the ratification of the prefent Cor.ftitu-tiori of the
 
 United States.
 

 I fteijjis I ought to do, great diffidence, when lam under the neceffity,'in the'execution of my duty as a Judge, of differing from the opinions of thofe entitled from; fuperior talents, and high authority, to my utmoft refpcct. I am compelled to do fo in the prefent inftance, but I ihali, at the fame time, affign myrea-fons for my opinion, and if, in the future courfe of this great caufeyl can be convinced that in this, or in any other, inftance, I have committed an error, I íhall moft chearfully acknowledge it. _
 

 The opinion I have long entertained, and ÍH11 do entertain,. in regard to the operation of the fourth article is, that the ftipu-lation in favour of creditors, fo as to enable them to bring fuits, and recover the full value of their debts, could not at that time be carried into effect in any other manner, than by a repeal of theftatutes of the different States, conftituting the' impediments to their recovery, and the paffing of fuch other a£fs as might be neceffary to give the recovery entire efficacy, in execution of the treaty.
 

 I confider a treaty, (fpeaking generally, independent of the particular proviiions on the fubjeft, in our prefent Conftitu
 
 *272
 
 tion, the effefl of which I iliall afterwards obferve upon) as a folsmn promife by the whole nation, that fuch and fuch things ihali be done, or that fuch and fuch rights fhall be enjoyed.
 

 I think the diftin&ion .taken by the. Plaintiff’s counfel as to ftipulations in the treaty,
 
 executed
 
 or
 
 executory,
 
 will'enable me
 
 to
 
 illuftiate my meaning, by corifidering various ftipulations in the treaty in queftion.
 

 ift. I will confider what may be deemed
 
 executed
 
 articles.
 

 in this clafs I would place,—the acknowledgement of independence in the firft article ;—the permiffion to fiih on the Banks in the third;—the acknowledgement of the right to navigate the
 
 Mifftffippi
 
 in the eighth.
 

 Tiielel call executed, becaufe, from the nature of them, they require no further a£t to be. done,
 

 ' ¿J. The
 
 executory
 
 (fo far as they concern our part in the execution) i would pláce in three clafies.
 

 • Thofe which concern either, ift, the Legiflative Authority. —2¡1, The Executive;—3d, The Judicial.
 

 The fourth article in queftion, I confider to be a provifion, the purpofe of which could only be effeefted by the Legiflative authority; becaufe when a nation promifes to do a thing, it is to be underftood, that this promife is to be carried into execution, in- the manner which the Conftitution of that nation preferibes.
 

 When, therefore, a treaty ilipuiates for any thing of a le-giflative nature, the manner of giving effedi: to this ftipulation is by that power which poffeffes the Legiflative authority, and which confequently is autborized'to preferibe laws to the people ibr their obedience, palling fuch laws as the public obligation requires. Laws are always feen, and through that medium people know what they have to do. Treaties are 'not always feen. Some articles (being what are called
 
 fecret articles)
 
 ' the public never fee. The prefent Conftitution of the
 
 United States.,
 
 affords the firft inftance of any government, which, by faying, treaties ihould be
 
 the fupreme law of the land,
 
 made it, indifpenfablethat they ihouid be publifhed for the information of all. At the fame time I admit, that a treaty, when executed purfuant to full power, is valid and obligator)-, in point of
 
 moral obligation,
 
 on all, as well on the Legiflative, Executive, and Judicial "Departments, (fofar as the authc (ity of either extends, which in regard to the laft, nnift, in this refpeff, be very limited) as on every individual of the nation, xinconnedted officially with .either ; becaufe it is a promife in efftift by the whole nation to another nation, and if not in fact couipiird with, unlefs there be valid reafons for non-compli-anee, the public faith is violated.
 

 I have mentioned this great article which concerns the Legifi-
 
 *273
 
 lative department: Let me now, by wayof further illuftration, conftde'r one which concerns the Executive.
 

 it is ftipulated in one part of this treaty, “ That all prifón- “ ers on both Tides ihall be fet at liberty.” I very much doubt, whether, the Commander in Chief, ^without orders from Cori-* grefs (then poffeffing the fupréme executive authority of the
 
 Union)_
 
 could have been juftified in releafing fuch prifoners as he had then in cuftody, after the ratification. Certainly no inferior officer, in whole adtual care they were, could, without an order directly or indirectly fnpm the Commander in Chief: And yet, I can fee no reafon, if a treaty is to be confidered as. operating dejadlo, by fuperior authority, notwithftanding any impediment arifing from laws then in being, why the ri-gour of the treaty, which in that inftanc.e is faid to be uncon-troulable, ihould not be fo in every other. If
 
 Legijlative
 
 au-thoriiy is fuperfeded, why not
 
 Executive ?
 
 Surely the former is not lefs facred than the latter.
 

 In like manner as to the judicial. It is ftipulated in the 6th article, “ That there íhall be no future confifcations made, nor “ any profecutions commenced agí hft any perfon or perfons, “ for, or by reafon of any parr, which he or they may have taken “ in the prefent war: and that no perfon (hall, on that account, “ fufFer any future lofs ,or damage, either in his perfon, liberty, ‘‘ or property; and that thofe' who may be in confinement on « fuch charges, at the time of the ratification of the treaty in “
 
 America,
 
 fliall be immediately fet at liberty,.and theprofecu- “ tions fo commenced, be difcontirtued.” I. apprehend this article, fo far as it refpeded the releafe of prifoners confined, could only be executed by an order from the Judges of the Court, having judicial authority, in the cafes in q edition, in confe-quence either of an adtual alteration in the law, by the Legiflar ture, in conformity to the treaty, (where that was neceffary); or, of a particular pardon by the Executive; and that if a Jail- or, merely becaufe the treaty was ratified, and he found this ár-tide in it, had fet all fuch prifoners at liberty, he would' have been guilty of an efc-ape.
 

 This reafdning, in my opinion, derives confiderable weight from the practice in
 
 Great Britain.
 

 The King of
 
 Great Britain
 
 certainly reprefents the fove-reignty of'the whole nation, as to foreign negociations, as completely as the Congrefs of the
 
 United States
 
 ever reprefented ' the fovere.ignty,of the Union, in that particular. His power, as to declaring war and making peace, is as unlimited as the refpeélive authorities for thofe pur.pofes in
 
 ÚijUnited
 
 States.— The whole nation of
 
 Great Britain
 
 fpeaks as effed.üally', and as completely through him, as all the people of the
 
 United States
 
 a dedaration of
 
 *274
 
 war, or through the Prefident and Senate as to making peace j .and of courfe, as they ever did through Congrefs, under the old-articles of confederation, the'power certainly not being leflened. The law of nations equally applies to-his treaties on behalf of
 
 Great
 
 Britain,, as it can-apply to any treaty made on behalf of. the
 
 United States.
 
 Yet, I believe it is an' invariable practice in that country, when the King makes any ftipulation of a le-' giflative nature, that it is carried into effeét by an a£fc of Parliament. The Parliament is confldered as bound, upon a principle of moral obligation, to preferve the public faith, pledged, by the treaty, by palling fuch laws as its obligation requires j but uniil fuch laws are palled, the fyftem of law, entitled to actual obedience, remains
 
 de
 
 faSto, as before. I doubt not, if my time had admitted of a full feareh, and I could have had accefs to the proper books for information, that 1-could find many in-ftances of this. I will, however, mention one, which I have been able to procure here. It is a tranfadtion of this nature, fo late as the commercial treaty between
 
 Great Britain
 
 and France, in 1.786. The information I derive is from the Annual Regifters of 1786 and 1787, which I fuppofe, as to this point, are corred!.
 

 One article of the treaty was in thefe words:
 

 ** The wines of France, imported diredtly from France to “ Great Britain, ihall, in no cafe, pay "any higher duties than
 
 “
 
 thqfe which the wines of Portugal now pay.”
 

 This treaty was figned at Verfailles, the 26th .of September, 1786.
 

 On the 24th of January, 1787, the King met his Parliament,' and amo ig other things, informed the two houfes, That he “ had concluded a treaty of commerce with the French King, “ and had ordered a copy of it to be laid before, them. He re- “ commended, as the firft objeffc of their deliberations,
 
 the ne- “ cejfary meafures for carrying it into effeSi-,
 
 and exprefied his truft, that they would find the-provilions,' contained in it, to “ be calculated for the encouragement of induftry, and the ex- “ tenfion’of lawful commerce in bojh countries ⅛ and by pro- “ moting a beneficial inter’courfe between their refpedtive inha-
 
 u
 
 bitants, likely to give additional permanency to the bleflings “ of peace.”
 

 On the 15th of
 
 February.,
 
 the Houfe of Commons, being in a committee of the whole houfe, Mr.
 
 Pitt,
 
 the principal Minif- . ter of the Crown, moved the following refolutiqn:
 

 « That the wines of France be imported into this country ‘‘.upon as-low.duties, as the prefent duties paid on the importa- “ tiou of Portugal wines.”
 

 'Irhave not had time to examine them all, but, I doubt not, it will be .found, on infpe&ion, that the're was not a Angle p-rovi- -.
 
 *275
 
 fidn in the treaty, inoonfifteni with former parliamentary re'gu-lations,' but Parliament acted upon it by a new law, calculated
 
 to
 
 give it effect.
 

 ' The following quotation, (which is a literal one) I think, is very much to the purpofe:
 

 “ On the Monday following, the report of the. committee, “ upon- the commercial treaty, was brought up, and, on the “ ufua-1 motion beings made, that the houfe do agree to the “ fame, notice was taken of the o-miffion of the mention of Ire- “ Land, both in the treaty and the Tariff-; and, i.t was allied, “ whether or no fhe was underftood to be included in it Í Tq “ this queftion Mr, Pitt replied, That Ireland .was undoubtedly “ entitled to all the benefits of the treaty; but it was entirely at her own option, whether fhe would choofe to avail herfclf of thofs advantages;
 
 Jar it was only to be done by her pajjing Ujuch laws as Jhould put the Tariff on the Jame Jooting in that
 
 “•
 
 country
 
 as'
 
 it was jlipulated jhould be done in this.
 
 Had the adoption of the treaty by Ireland, been a ftipulation neceflary “ to be performed before it' could b,e finally concluded on in “ this country, then this country would have been deprived of “ all the benefits refulting from it in the event of Ireland’s refufal.” _ < '
 

 _ < Now it is obfer-v-abls, that in fpeaking of this Tariff, in the treaty, the King of
 
 Great Britain
 
 does not promife,
 
 that the Parliament jhallpajs laws to fuel) an ejjedi-,
 
 but the language is thus:
 

 “ The two high contrail krg parties have thought propen to fettle the duties on certain goods and merchandifes, in order “ to fix invariably, the footing on which the trade therein fliall “ be eftabli&ed between the two nations. In confequence of “ which, they have agreed upon the following Tariff, &c.” viz.
 

 In another part, the King of
 
 Great Britain
 
 fays, “ His
 
 Britannic
 
 Majefty referves the right of countervailing 'by additional duties on the undermentioned merchandifes, the . “ internal duties a£lually impofed upon the manufaflures, or “ the import duties which are charged on the raw materials j “ namely, on all linens or cottons, ftained or painted, on beer, ⅞ glafs-ware, plate-glafs, and iron.”
 

 Here is no mention of the Parliament, and yet, no man living will (ay that a bare proclamation of the King, upon the ground of the treaty,-would bean authority for the levying of any duties whatever;
 
 but it muji be done in the conjtitutional mode,
 
 by • a¿fc .of parliament, which affords an additional proof, that where any thing of a legiflative nature is- in contemplation, it is con-ftantly implied and underftood, (without exprefs words) that it can alone he effeifted by the medium of the legiflative authority»
 

 
 *276
 
 That this practice I have noticed is not an occáfionaÍ one, but has' been- conftantly obferved, I think is highly probable from_ this circumftahce; that if treaties were considered in that country as
 
 ipfo faSto
 
 repealing all laws inconfiilent with them, and impofing new ones, they ought to be.bound up with the ftatutes at.large, (which they never have been) otherwife the publication would be at leaft incomplete, if not deceitful-.
 

 Thefe examples from
 
 Great Britain !
 
 confiderof very high authority, as they are taken from a kingdom equally bound by the law of nations as we are; pofieffing a mixed form of -government as we do; and, fo far as common principles of le-giilation are concerned, being the very country from which we derive the rudiments of our legal ideas. ...
 

 Rut i muft admit that there is.alfo a very high authority, and to which we naturally fhould be more partial, again®
 
 this
 
 conftrudtiori. It is the authority of the Congrefs of the
 
 United. States
 
 in the ye.ar I/Sy. It is an authority derived from an unanimous opinion of that truly refpectable body, conveyed in a circular letter from Congrefs to'the different States on-this very fubjedh I-bow with proper deference to that great authority: But I ihotfld be unworthy of the high ftatiorrl held, if I did not fpcak my real fentiments as a judge, uninfluenced by any authority whatfoever. It is certain, that in this particular, Congrefs were not exercífing a judicial power; and, therefore, the opinion is not conclufive on anycourt of juftice. I feel, however fome confolatiori in differing from an Opinion for which fo much refpedt-muft, and ought to'be entertained, by refledling that though ■ this was the unanimous Opinion-pf Congrefs, it was not the - unanimous opinion
 
 of
 
 the people of the
 
 United States.
 
 So far from it, that I believe no fuit was ever maintained in any court in the
 
 United
 
 States, merely on the footing of the treaty when an adt of the ligiea-ture flood in the way. It was to remove the obftacle arifing from fuch an opinion, that Congrefs recommended the repeal of all adts inconiiilent with the .due execution of the treaty. And I muft with due fubmiflion fay, that in my opinion without fuch a repeal, no
 
 Britijh
 
 creditor could have maintained a fuit in virtue of the treaty, where any legiilative impediment exifted, until the prefent conftitution of the
 
 United States
 
 was formed. .
 

 2-d. The article in the conftitution concerning treaties I have always confidercd, and do now confider, was in confequence of the conflidt of. opinions I have mentioned on the fubjedt of the treaty in queftion. It was found- in this inftance, as in many others, that when thirteen different legiflatures were neceflary to -adt in Unifon on many occafions, it was in vain to expedt that they would always agree to adt ás Congrefs might" think it their duty to require. Requisitions formerly
 
 *277
 
 were made binding in point of
 
 moral
 
 obligation, (fo far as the amount of money, was concerned, of which Congrefs was the conftitutional judge,), but'the
 
 right
 
 'and
 
 the power
 
 being fepa-rated, it was found often impracticable to make-them aCt in-■conjunction. To obviate this difficulty, which-every one knows had been the means of greatly diftrefilng the union, and injuring its public credit, a pfiwer was given lío the Reprefe.n-tatives.of the whole union to raife taxes by their own authority for the good of the whole. Similar .embarrafiments had been found about the treaty. This was binding in
 
 moral
 
 obligation, but could not be conftitutionally carried into effeCt (at leaft in the opinion of many,) fofar as afts oflegiflation then in being conftituted. an impediment, but by a repeal.' The extreme in-con veniencies felt from fuch a fyftem dictated the remedy which the conftitution has. new provided, “ that all treaties made “ or which ill all be made under the authority of the
 
 United
 
 “
 
 -States',
 
 fhall be
 
 the fttpreme law of the land
 
 j and that the “ judges in every State ihali be bound thereby, any thing in “ the conftitution or laws of any State to-the contrary not-ci withftanding.” Under this Conftitution therefore, fo far as a treaty conftitutionally is binding, upon principles of
 
 moral
 
 obligation, it is alfo by the vigour of its own authority to be executed in faCt. It would not otherwife be the
 
 fupreme law-in
 
 the new fenfe provided for, and it was fo before in a
 
 moral fonje.
 

 The provifion extends , to fubfifting as well as to future treaties. ' I confider, therefore, that when thi? conftitution was ratified, the cafe as to the treaty in queftion ftood upon the fame footing, as if every aCt conftituting an impediment to a creditor’s recovery had been expresfly repealed, and any further aCt pafled, which the public obligation had before required, if a repeal alone would not have been fufficient.
 

 Before I go to the confideration of the words of the treaty itfelf, I think it material to fay a few words as to the operation which an aCtual repeal would have had.
 

 I believe no one will doubt, that
 
 every thing done'under the ' ail while in
 
 exijlence, fo far as private rights at leaft were concerned, would have been uriaffeCted by the repeal. If a fta-tute requires a will of lands to be executed in the prefence of ■two witnefles ; and. a will is a&ually executed in that manner, and the 'ftatute is afterwards repealed* and- three witnefles are ' made neceflary, the will executed in the prefence of two others, when the former ftatute was in being, would be undoubtedly good ⅛ and if I am not rniftaken, a 'will made according to a law in being has been held gpod, even though the devifor died after, an alteration' of it. Of this, however, I am not fure; but; •the general pofitton, I imagine,, will not be queftioned,
 

 
 *278
 
 Let us now fee the words of the treaty.
 

 They are thefe :
 

 “ It is agreed, that creditors on either fide (hall meet with “ no lawful impediment, to the recovery of the full value in ‘c fieriing money, of all
 
 bona fide
 
 debts heretofore contracted.”
 

 The meaning of this provifion may perhaps be better con-fidered by an analyfation of its parts, fo far as they concern ' the queftion before us.
 

 1. Creditors—There can be no creditor without two correlatives, a
 
 debtor
 
 and a
 
 debt.
 

 Prima
 
 facie, therefore, if a debtor has been difcharged, he is not the perfon whom any other perfon can fue as a
 
 creditor.
 
 This probably may be fairly applied to the prefent Defendant,
 
 who as a debtor was difcharged by legal
 
 authority.
 

 With regard to the debt, that in the prefent inftance was not extinguifhed even bv the a eft of the State,
 
 becaufe the right of the creditor to the money was not taken away.
 

 The
 
 debt,
 
 therefore, remains but not from the fame
 
 debtor.
 
 The ftate may be confideredas fubftituting itfelfin fome mea-fure in the place of the debtor. -The full effedfc of that fubfti-tution, I am not now to confider, nor would it be proper for-me at prefent to give an opinion upon it.' The queftion is not, whether the creditor is entitled to his money, or in what manner, but whether he is entitled to recover it againft the prefent Defendant.
 

 2.
 
 'No lawful impediment.
 

 Thefe words muft be conftrued as relative to the-former, for the whole claufe muft be taken together, Therefore, where there are a
 
 creditor
 
 and a debtor, there is to be no lawful impediment to the former recovering againft the latter.
 

 If the prefent Defendant be not a debtor to the Plaintiff, how can the treaty operate as againft him ?
 

 The words “ lawful impediment,” may admit of two fenfes,
 

 One—“ Any lawful impediment wh ufoever arifing from *c any adl done to the prejudice of a creditor’s right during the “ war.” 1 add that reftridlion “ during the war,” becaufe the rules of conftrudtion as to treaties, muft narrow the words as to the objeft,
 
 the war.,
 
 the affairs of which the Treaty of Peace was intended to operate upon.
 

 Or,any impediment arifing from .any law then in being, “ or thereafter to be palled, to the prejudice of a creditor’s right.”
 

 The latter, I think, is not an unnatural conftruction, and would give the words great operation, and I think is to. be preferred to the former, for the following reafons :
 

 1. This would ftipulate for what each Legiflature of the Union would.rightfully and hpntftly do,
 
 relinquifh public, claims'
 
 
 *279
 

 to aelts exijling before the war,
 
 and which ptherwifé might have flood upon a precarious footing; for though peace alone would do away a common law difability to fue, yet 1 apprehend it would not
 
 ipfo failo
 
 remove a difability exprefsly created by ftatute, much lefs extinguiib any public right acquired under anyaél of confifcation.
 

 • 2. Though Congrefs poffibly might, as the price of peace, have been autborifed to give up, even rights fully acquired by private perfons during the war, more efpecially if derived from the laws of war only againit ihe enemy, and in that cafe the individual might have been-.entitled to compenfation from the public, for whole interefts his own rights were facrificed; yet, nothing b'ut the úioft rigorous neceihty could juftify fuch a facrifice; fuch a f--.crifi.ee is not to be prefumed even to have been intended under the operation of general words, not making fuch a conflruchon unavoidable. For, it is reafonable to infer, that in fuch a cafe fpecial words would have been ufecj to obviate the lead colourable doubt. .
 

 • Thus (for example) if it was ftipulated in a treaty of peace between two European powers, “ that all ihips taken during the v/dr íhould b? reftored,” I imagine this would - not be conftrued to include fliips taken by privateers, and legally condemned during the war, uidefs it had, in facS, happened ’ that no other ihips had been taken, and then i fuppofe they would be under flood as comprehended, and their own nation muilhave indemnified them'.
 

 3..If, according to the practice in
 
 Great
 
 Britain, in conformity to the law of nations, and upon the principles of a mixed govenment,
 
 in cafe any impediments had then
 
 exijled,,
 
 by a£ts of Parliament in Great
 
 Britain,
 
 to the recovery of American debts*, fuch impediments could only have been removed by d
 
 repeal, we may prtfume the
 
 Britijh
 
 negociator had reafon to conclude,
 
 that the lawful impediments in-this country could onty be removed in the fame
 
 manner; and if fo, may we not fair . ly fay, that the impediments ⅛ view could be no other than fuch as ,the Legiflatures in the refpeitive countries could do away by a repeal, or might by fubfequent laws enact ? If they wanted a further act of legiilation, grounded not merely on ordinary legiflative authority, but upon
 
 power
 
 to deftroy private. rights acquired under legiflative faith, long fince pledged and relied on, very fpecial words were proper to effect that object, and neither ¡none country nor the other could it have been effected with the leaf! colour ofjuflice, but by providing at the fame time the fulleft means of indemnification.
 

 4. This conítrutí’icm derives great weight from the recom-mendatory letter of Congrefs i before mentioned, for I will venture to fey, had -the »¿i they recommended been paffe ’ in
 
 *280
 
 the State, in the very words they recommended, they would not have had e.fficacy enough to deftroy thofe payments as a bar. And yet, if Congrefs'thought fuch a cafe Ought to have b’een comprehended, I prefume they would have recommended a fpecial provifion, clearly comprehending fuch cafes, and accompanied with a full indemnity. '
 

 I laid the words of the treaty would have ■ gtcat operation, without giving them the very rigorous one contended-'for. And that will more fully appear when’we take up the remaining words, viz.
 

 3. “ To the recovery of the full value in fterling money pi “ all-
 
 bona fide
 
 debts heretofore contracted.
 

 The operation (exclufive of thefe payments) would there* fore be ⅛⅛:
 

 ift. All creditors whofe debts had not been confifcated, or where the confifcations were not complete, and no .payments had been made, would have aright of recoverihg their debts.
 

 ad. Perhaps all creditors, whether their debts were confif-cated or not, or whether confifcations were completé or not,excepting thofe only from whom the government had received the money, would be entitled to recover,
 
 becaufie undoubtedly the refpedlive Leglfiatures were competent to refiore all thefe.
 

 3d. Another object of no fmall importance, was to iecure the payment of all thefe debts in
 
 Jlerling money fio
 
 that the creditors might not fuffer by paper currency, either then in exiftence, or that might be thereafter emitted.
 

 When thefe general words, therefore, can comprehend
 
 fo
 
 many cafes, all reafonable objects .of the article, I cannot think I am' compelled as a Judge, and therefore I ought not to do fo, to fay
 
 that the general words of this
 
 article,
 
 jhall
 
 extin-
 
 guijh private as well as public rights.
 

 I hold public faith fo facred, when once pledged either to citizens or to foreigners, that a violation of that faith is never to be inferred as even in contemplation, but when it ⅛ impcffi-ble to give any other reafonable conftruction to a public act. I do not clearly fee that it was intended in the prefent inftance. I cannot therefore'bring myfelf to fay,
 
 that the prefent Defendant having once lawfully paid the
 
 money,
 
 Jhall pay it over again.
 
 If the.matter be only doubtful, I think the doubt ihould incline irifavour of an innocent individual, and not- againft him. .1 ihould .hope that the prefent Plaintiff will ftill receive his money, as his right to the money certainly has not been divefted, but i think for all. the reafons I have given, he is not entitled to recover it from the prefent Defendant.
 

 My opinion, therefore, on the whole of' this cafe- is, that judgment ought to be given for the Defendant upon the fecond pl.ea ; upon the third, fourth and fifth for the Plaintiff.
 

 
 *281
 
 Wilson,
 
 JuJiice.
 

 I íhall be concife in delivering my opinion, as it depends on a few plain principles.
 

 If
 
 Virginia
 
 had a power to pafs the law of
 
 OSiober
 
 1777, fhe muft'be equally empowered to pafs afimilar law in any future'war ; for, the powers of Congrefs were, in faft, abridged by the articles of confederation ; and in relation to'the pre-fent Conftitution, fhe ftill retains her fovereigr.ty and independence as a State, except in the inftance.s of exprefs delegation to the Federal Government.
 

 There are two points involved in thedifcúlHon of this power of confifcation : The firft arifing from the rule prefcrihed by the law of nations ; and the fecond arifing from the conftriic- , tion of the treaty of peace.
 

 When the
 
 United States
 
 declared their independence, they were bound to receive the law of nations, in its modern ftate of purity and refinement. Bv every nation, whatever is its form of government, the confifcation of debts has long been confideréd difreputableand, we know, that not a'ftpgle, confifcation of that kind ftained the code of any of the
 
 European
 
 powers, -who were engaged in the war, which our revolution produced. Nor did any aiithority for the confifcation of debts proceed from Congrefs (that body, which clearly pofleiT-•ed the right of confifcation, as ah incident of the powers of. war and peace)'and, therefore, in no .inftance can-the aft of 'confifcation be. considered as an aft of. the nation.
 

 But even if
 
 Virginia
 
 had the power to confifcate, the treaty ■ annuls the confifcation. The fourth article is well expfefled to . meet the .very cafe : it is not confined to debts exifting at the time of making the treaty; but is extended to debts
 
 heretofore contrasted.
 
 It is impoffible by any glofiary, .or argument, to make the words more perfpieuous, more con'clu'five, than by a bare recital. Independent, therefore, of the Conftitution of the
 
 United
 
 States, (which authoritatively inculcátes the obligation of contrafts) the treaty is fufficient to remove every impediment founded on the law. of
 
 Virginia.
 
 The State made ' the'lawthe State was a party to the making of the treaty : a law does nothing more than exprefs the will of a' nation j and a treaty, does the fame.
 

 Under this general view of the fubjeft, I think the judg-ment of the CircuitCourt ought to be reverfed.
 

 Cushing,
 
 JuJiice.
 

 My ftate of this cafe will, agreeably to my view of it, be ihort, I íhall not queftion the right of a State to confifcate debts. Here is an aft of the. Aflembly of Virginia, pafled in 1777, refpecting debts j which contemplating to prevent the enemy, deriving ftrength by the receipt of them during the war, provides, that if any
 
 Britijh
 
 debtor will pay his debt into the Loan Office, obtain a certificate and
 
 *282
 
 receipt as directed, hs íhall be difeharged from fo much of the debt. But an intent is expreffed in the. act not to confifcate, unlefs
 
 Great Britain
 
 iliould fet the example. This act, it is faid, works a difeharge and a bar to.the payer. If fuch payment is to be confidered as a difeharge, or a bar, fo long as the act had force, the queftion occurs ;—.Was there a power, by • the treaty, fuppofing it contained proper words, entirely to re-movp-this law, -and this bar, out of the creditor’s way ? .
 

 This power feems not to have been contended againft, by the Defendant’s council: And, indeed, it cannot be denied ; the treaty having been fanctioned, in all its parts, by the Conftitution of the
 
 Ünited
 
 States, as the fupreme law of the land!
 

 Then arifes the great queftion, upon the import of the fourth article of the treaty: And to me, the plain and obvious meaning of it, goes to nullify,
 
 ai
 
 initio, all laws, or the impediments .of any law, as far as' they might havé been defigned to impair, " or impede, the creditor’s right, or remedy, againft his original debtor. . “
 
 Creditors on either fide Jhall meet with no lawful
 
 im-tc
 
 pediment to the recovery of the full value in fierlirtg moneys of
 
 w
 
 all bona fide'debts heretofore contra tied”
 

 ■The articlefpeaking of .creditors, and
 
 bona fide
 
 debts heretofore-contracted, plainly contemplates debts, as originally contracted, and creditors and original debtors; removing otit of the way all legal impediments ; fo' that a recovery might be had, as if nó fuch laws had particularly interpofed. The words—“ recovery.of the full value in fterling money,” if •they have-force, or meaning, muft annihilate all tender laws, making any thing a tender, but fterling money; and.the other . words, or at 1'eaft the whole taken together, muft, in like man-tier, remove all other-impediments of law, aimed at the recovery of thofe debts. -
 

 What has fome force to confirm this conftrudtion,. is the fenfe of-all Europe, that fuch debts could not be touched by •States, without a breach of public faith: And^for that, and 'other reafons, no doubt, this provifion was infifted' upon, in ’full latitude,'by the
 
 Britijh
 
 negotiators. If the fenfe of the article be, as ftated, it obviates, at once, all the ingenious, - metaphyfical,' reafoning and refinement- upon the words,
 
 debt,
 
 difeharge, éxtinguijhnient, and affords an anfwer to the decifion ■ made in the time of the'interregnum!—'that
 
 payment to fequef-.■tors, was payment to the'creditor.
 
 ' ' 1 '
 

 A State may make what rules it pleafes; and thofe rules muft neceff.riiy have place within itfelf. •
 

 But here is a treaty, the fupreme law, which overrules all’ .State laws upon thefubjexfx, to all intents and'purpofes; and that makes tne. difference.- . Diverfe objedHons are made to this ■
 
 conftruction-That it
 
 is an odious one, abd-as fuch;. ought to '
 
 *283
 
 be avoided :
 
 That
 
 treaties regard the exiíiing Alte of things :
 
 That
 
 it would- carry an imputation -upon public .faith:
 
 That
 
 it is founded-on the power of eminent domain, which ought not to be exercifed, but upon’the moll: urgent occalions:
 
 That
 
 the-negociators'themfelv’cs did not think they had power to repeal laws of confifcation;
 
 becaufc
 
 they, by the 5th article, only agreed, .that Congrefsfiiould recommend a.repeal to the States.
 

 As to. the rule refpeftingr odious conftruftjons • that’ takes place where the meaning is'doubtful, not where it is clear, as I think it is in-this cafe. But it can hgrdly be confidered as an odious thing, to inforce the payment of. anh’oneft debt, accord- ■ ing to the true intent and meaning oh the parties contracting; ■ .efpecially if, as in this cafe, the State having, received ibcur-o-ney, is bound in juftice and honor, io.itfd..Sr;-n.ify the .debtor, for what it in fact received. ’ In whatever other lights this a¿p Of AAembly may be-’fevieweJ, I conftder it in cqe, as ccnwining. a Arong implied-engagement, on the-part of..the- Statev('to.-i-n>'. demnify every one who ihould pay money under ic/purAai-it'to the invitation it held out. ... , ' ' .
 

 Having never confifcated the dabt, the Siate.raúíly in"the nature and reafon of things, confider itfclfas ar.fwc&5b1-e'tOj-the' value. And this feems to-be the full fenfe of the vjegiilators . upon this Abject, in a fubfcqutnt aft of aAembiy but the treaty holds the original debtor anljverable Co his.creditor, .as Í underirand. tiie. matter. The State, therefore, ■ muft- be r^fpon-’ lible to the debtor.
 

 Thefe confiderations will, incAeft, exclude, the idea, of the. power .of eminent domain; and if they did -not,- yet ⅛there was AiBcient authority to exetcile it, and the greattA occafion that perhaps could ever happen,'. The' fame coniideratidnswi.il alfo takeaway all ground of imputation upon public faith. ; ..
 

 Again, the' treaty -regarded^.the' .exifting. fiate -of things, by removing the laws then cxifting, which intended 10 defeat the creditor of his ufual remedy at law.
 

 As to the obferva'tions 'Upon the..recommendaioiT -próvifion of-the 5th article; I do not fee.that.wc can colleft the private opinion of the negcciators, refpeftrng their powers, -by 'whát they .did -not do: and if
 
 \ys
 
 could, this, court, is. not bound .by . their opinion, unlefs the reafons‘on which it was founded, being .known, were convincing. It would be hard upon them, to fuppofe they gave up all, that they might thmjc they Arjftly had a right to give up. W e may allow force what to ikili, policy and fidelity.
 

 ■ With refpeft to confutations of real and-perfonal dilates, which had been compleated, the eftates fold, and, perhaps, paiTcd through the hands of a number cfpurcbafors, ar.d improvements made Upon real eftates, by the then poíüítbrs; they knew, that to give them up abiblutely, rn.nt create much confufion in this
 
 *284
 
 country. Avoiding that;'(whether from an apprehenfion of want of power does not appear from the inftrument) they were lead only to agree, that Congrefs- ihould recommend a reftitution, or composition.
 

 The 4th article, which is particularly and folely employed about debts,, makes provifion, according to the doCtrine then held fa'cred by all the fovereigns of
 
 Europe. ■
 

 Although our negociators did not’gain an exemption for individuals, from
 
 bona fide
 
 debts, contracted in time of peace, yet •they gained much for this country: as- rights' of fiihery, large boundaries, a fettled peace, .and abfolute independence, with their concomitant and confequent advantages: All which, it might not have been prudent for them to rifque, by obftinately infilling on fuch exemption, either in whole or in part, contrary to the humane apd meliorated policy of the civilized world, in this particular.
 

 The 5th article, it is conceived, can not affeft or alter the conltru&ion of the 4th article. For, firit, it is againft reafon, that a (pedal provifion madé refpedting debts by name, ihould' be taken away immediately after, in the next article, by general words, or words of'implication, which words too, have, other-wife, ample matter-to operate upon. ad. No implication'.from the 5th article,.- can touch the prefent cafe, becaufe that fpeaks only of aCtqái confifcations, and here was no confifcation. If we believe the
 
 Virginia
 
 legillators, they fay, “ We do not con- “ fifcate—we will not confifcate debts, unlefs
 
 Great Britain
 
 “•lets the example^1 which it is not pretended (he-ever did.
 

 ■The provifion, that-,'14
 
 Creditors jhall meet - with no lawful
 
 “ impediment,” &c. is as abfolute, unconditional, and-peremptory, as words can well exprefs, and made not to depend on the will and pleafure, or the optional condu£l of any body of men whatever. -
 

 To eiFecl the objeCl intended, there is no want of proper and ftrong language; there is no want of power, the treaty being fan&ioned as the fupreme law, by the conllitution of the
 
 United States-,
 
 which nobqdy pretends to deny to be paramount and controlling to all ftate laws, and even Hate conftitutions, wherefoever they interfere or, difagree. , '
 

 The treatyj then,- aS to the point in queftion, is of equal force p'with the-conllitution'itfelf;- and certainly, with, any law- what-fover. And the words, “
 
 Jhall meet with no lawful impedi-mentfi
 
 &c. are as ftrong-as the wit of man coul'd deviie, to avoid all effects, of iequeilration, confifcation, or any other ob-ftacle thrown in the way, by any law, particularly pointed againft the recovery of fuch .debts.
 

 I.am, therefore, of'opinion, that the judgment of-the.Circuit Court-ought to b¿ reverfed.'
 

 
 *285
 
 By the Court. All and fingular the premifes being feen by the court here and fully underftood, and mature deliberation had thereon, becaufe it appears to the court now here, that in the record and procefs aforefaid, and alfo in the rendition of the judgment aforefaid, upon the demurrer to the rejoinder of the Defendants in error, to the replication of the fecónd plea, it is manifeftly erred, it is confidered that the laid judgment .for thofe errors and others in the record and procefs aforefaid, be revoked and annulled, and altogether held for nought, and it is further confidered by the court here, that the Plaintiff in error recover againft the Defendants, two thoufand nine hundred and feventy-iix pounds, eleven ihillings and fix-pence, . good
 
 Britijh
 
 money, commonly called fterling money, his debt aforefaid, and his cofts by him about his fuit in this behalf expended, and the faid Defendants, in mercy, &c. But this judgment is to be, difeharged by the payment of the fum of 596 dollars, and intereft thereon to be computed after the rate of .five per cent per annum, from the 7th day of July, 1782, till payment, befides the cofts, and by the payment of fuch dama-, ges as ihall be awarded to the Plaintiff in error, on a writ of enquiry to be iffued by the Circuit Court of Virginia,-to af-certain the fum really due to the Plaintiff in error, exclufive-Jy of the faid fum of 596 dollars, which was found to be due to the Plaintiff ih'error, upon the trial in the faid Circuit Court, on the iffue joined upon the Defendant’s plea of payment, at a time when the judgment of the faid Circuit Court on the faid demurrer was unrev'erfed and in full force and vigor, and for the execution of the judgment of the courti the caufe aforefaid is remanded to the faid Circuit Court of
 
 Virginia.
 

 Judgment
 
 'reve'rfed.
 
 '■
 

 *
 

 See the Ordinance of the ¿orh of November, t 7Sr. See, alfo, the Refs)!utio:i of the 23J of November, 1781, in which Congrefs recoin-» mended to the (bates, to pufs jaws to puniih inflations of the law cf nations.
 

 *
 

 See the oath in the aft of the 24th of September, J7Í9. 1. vol. p. 53. f. 8. S.vift’s edition.
 

 *
 

 7udge TREOELL, (oiie of: the Judges whq decided the origi~-~ iial caufC) in conformity to a pr~Uce which the Judges of this court Pave gene~aliy p~rthed, forbore taking any part in this decition, a~ a Jnd~e, "ponthe prefent wrtt of~rror. havine declared fr~n the uIrft he meant on1y to do Lo, in cafe of an. eq~aI divilioii of.opinion among the other Judges. But he obferved, that he thought there would be no im-~ proptiety in his readina in hi~ place the reàfon~ he had given in fuppor~ qt the judgment in the Circuit Court, a pra!tice exprefsly autho~rized inthe cafe of the Diftritft Judge~ upon an appe~d to the Circuit Court from hit own dècjfion tho' he is a~ the fame jinse &cluded from vot-iag. And Judge Iredril added~ that upon conmulting his brethren on the bei~ch, they.had acquicfced in the propriety of this proceeding. He therefore read thefe reafons in his place, fo far as th~'y reIpe~cd th~ 2~flC iiibje~t of.difcuffion in both courts, ~vhich was only as to the ct-±c~ of payments into the ticafury, every other point in contelt in th~ &~IrcuitConr~ having been relin~uifhed.
 

 It is, however, thought proper on this occahon, to publith. the \v~1OIC of th&~ argun~ent as delivered in the Cli cult Cotsrt, there beii~g fome Ol)~ fervationson that part of the fulde& that was r~linquiIhed which, it i~ copcei~d, ferve to illuftrate ~he great topk ofcontroverfy that occaf~oned the ~refentwrit of error. - - - - -
 

 The Judge, ~tterread~ngh~s.Opthidn, ãsdetlvered ~n t~e court ne1ow~ added, thati~th'~td not been chai~ged by any thins ~hich had .oc~ urred, i~I ~~the c~[e ou t1~e prclentwrit ~i etror.
 

 *
 

 Rui.!
 
 againit
 
 Btmkman,
 
 3
 
 Term
 
 Rep. 151. By-thrse Judges againft-one, in the (Jouvc of King’s Bench, in
 
 KnglunJ,
 

 †
 

 Chancellor
 
 H'ythc,
 
 of
 
 VhginU 1,
 
 who had given a contrary Opinion in . the High Court of Chancery of
 
 Virginia,
 
 a.few days before.
 

 *
 

 1 Cimm. 91.
 

 *
 

 The book commonly called “ The OM™£aw 6f,Evidence ;.T originally printed in 1735, and afterwards in 1739 and 17-14*
 

 †
 

 Upon confulting the
 
 BiUioth-ca Isrguni,
 
 it appears that
 
 Chtytin't Rqs>n:
 
 were publilhed in 1651, fo that tjie decilion mud have been under th.e' commonwealth.